**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

JUAN CARLOS VIDAL-MENDOZA,
*Defendant-Appellee*.

No. 11-30127

D.C. No.
3:10-cr-00393-
MA-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Malcolm F. Marsh, Senior District Judge, Presiding

Argued and Submitted
May 9, 2012—Portland, Oregon

Filed January 15, 2013

Before: A. Wallace Tashima, Richard C. Tallman, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

**SUMMARY**[*]

---

### Criminal Law

The panel reversed the district court's dismissal of an indictment charging illegal reentry after removal in a case in which the district court concluded that the underlying removal order was invalid because the immigration judge incorrectly determined that the defendant's statutory rape conviction was an aggravated felony and, as a result, erroneously informed him that he was not entitled to any relief from removal.

The panel held that because the defendant lacked apparent eligibility for relief under the applicable law at the time of his removal hearing and potentially became eligible for such relief only through a post-removal "change in law" precipitated by *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008) (en banc), the IJ correctly informed the defendant that he was not apparently eligible for voluntary departure at the time of his 2004 removal hearing. The panel concluded that the removal proceedings therefore did not violate the defendant's due process rights and his waiver of appeal rights was considered and intelligent.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Ryan Bounds, Assistant United States Attorney, Portland, Oregon, for Plaintiff-Appellant.

Susan Russell, Assistant Federal Public Defender, Portland, Oregon, for Defendant-Appellee.

---

**OPINION**

IKUTA, Circuit Judge:

The government appeals from the dismissal of an indictment charging Juan Carlos Vidal-Mendoza with illegal reentry after removal. 8 U.S.C. § 1326(a). We conclude that Vidal-Mendoza's underlying removal proceeding was consistent with due process because he was correctly informed that he was ineligible for discretionary relief from removal under the applicable law at the time of his removal hearing. Therefore, we reverse the dismissal of the indictment against Vidal-Mendoza and remand for further proceedings.

**I**

Vidal-Mendoza is a citizen of Mexico who came to the United States in 1995. In December 1999, he pleaded guilty to third degree rape under Oregon law[1] and received 180 days in jail, a $1,000 fine, and three years probation. The charge

---

[1] "A person commits the crime of rape in the third degree if the person has sexual intercourse with another person under 16 years of age." Or. Rev. Stat. § 163.355 (1999).

was for sexual contact between Vidal-Mendoza, who was 22 years old at the time, and his then-girlfriend, who was under the age of 16. In 2002, he pleaded guilty for failing to register as a sex offender and was sentenced to two years' probation. He voluntarily left the country some time later.

In February 2004, Border Patrol officers caught Vidal-Mendoza as he reentered the United States. A few days later, he appeared before an immigration judge (IJ) and conceded that he was removable for being present in the United States without having been admitted or paroled. The IJ told Vidal-Mendoza that, because the 1999 Oregon conviction constituted an aggravated felony, he was not entitled to any relief from removal, including voluntary departure.[2] The IJ entered a removal order and Vidal-Mendoza waived his right to appeal.

Vidal-Mendoza subsequently returned to the United States. In May 2009, following a second conviction for failing to register as a sex offender, immigration officials reinstated Vidal-Mendoza's 2004 order of removal and again ordered him removed from the country. He returned once more in 2010 and this time he was indicted under 8 U.S.C. § 1326(a) for illegally reentering the country after having been previously removed in 2004.[3]

---

[2] Voluntary departure is not available to an alien who has been convicted of an aggravated felony. 8 U.S.C. § 1229c(a)(1).

[3] Section 1326(a) provides that, any alien who

> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

In February 2011, Vidal-Mendoza moved to dismiss the indictment on the ground that his 2004 order of removal was invalid because the IJ incorrectly determined that his Oregon statutory rape conviction was an aggravated felony and, as a result, erroneously informed him that he was not eligible for voluntary departure. Vidal-Mendoza argued that his prior rape conviction was not an aggravated felony under *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008) (en banc), *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915, 928 (9th Cir. 2011) (en banc), a case decided four years after the challenged removal proceedings. He also asserted that he was prejudiced by the IJ's error. The district court agreed and dismissed the indictment.

The government timely appealed. It argues that under our recent en banc opinion in *United States v. Lopez-Velasquez*, 629 F.3d 894 (9th Cir. 2010) (en banc), the sufficiency of an

---

(2) enters, attempts to enter, or is at any time found in, the United States, unless

(A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or

(B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, imprisoned not more than 2 years, or both.

IJ's advice during removal proceedings must, with narrow exceptions not applicable here, be measured against the law at the time of the proceeding. The government asserts that the district court erred when it ignored this limitation and dismissed the indictment.

We have jurisdiction under 28 U.S.C. § 1291 and review the district court's dismissal of the indictment de novo. *United States v. Cisneros-Resendiz*, 656 F.3d 1015, 1018 (9th Cir. 2011).

## II

We begin by reviewing the legal framework for a collateral challenge to a removal order used as a predicate to § 1326 proceedings.

## A

An alien who "has been denied admission, excluded, deported or removed" commits a crime if the alien "enters, attempts to enter, or is at any time found in" the United States. 8 U.S.C. § 1326(a). One of the elements of a conviction under § 1326 is a prior removal order. § 1326(a)(1). Congress has strictly limited an alien's ability to bring a collateral challenge to such an order. *See* § 1326(d). Specifically, an alien facing criminal charges under § 1326(a) may not attack the validity of a predicate removal order "unless the alien demonstrates that (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation

proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." § 1326(d).

We have interpreted these narrow criteria broadly. Our flexible construction of § 1326(d) is predicated on our holding that an alien in removal proceedings has a due process right to be informed of "his or her ability to apply for relief from removal." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004). We derived this obligation from a regulation relating to an alien's application for lawful permanent resident status, which requires an IJ to inform an alien of "of his or her apparent eligibility to apply for [specified discretionary relief]" and to "afford the alien an opportunity to make application during the hearing" for such relief. 8 C.F.R. § 1240.11(a)(2); *see Lopez-Velasquez*, 629 F.3d at 896.[4] Because we have held this duty to inform

---

[4] Section 1240.11(a)(2) states:

> In conjunction with any application for creation of status of an alien lawfully admitted for permanent residence made to an immigration judge, if the alien is inadmissible under any provision of section 212(a) of the Act, and believes that he or she meets the eligibility requirements for a waiver of the ground of inadmissibility, he or she may apply to the immigration judge for such waiver. The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing, in accordance with the provisions of § 1240.8(d). In a relevant case, the immigration judge may adjudicate the sufficiency of an Affidavit of Support Under Section 213A (Form

the alien of "apparent eligibility" to apply for certain benefits is mandatory, we have concluded that the IJ's failure to discharge it "is a denial of due process that invalidates the underlying deportation proceeding." *United States v. Muro-Inclan*, 249 F.3d 1180, 1183–84 (9th Cir. 2001).

Our conclusion that the IJ may violate an alien's due process rights by failing to inform the alien of "apparent eligibility" to apply for specified relief often serves as the linchpin of our analysis of § 1326(d)'s requirements. First, if the IJ has failed to provide information about apparent eligibility for relief, we excuse the alien from demonstrating that "the alien exhausted any administrative remedies that may have been available to seek relief against the [removal] order," § 1326(d)(1), because we deem the alien's waiver of the right to an administrative appeal to have been insufficiently "considered and intelligent" due to the IJ's error. *Ubaldo-Figueroa*, 364 F.3d at 1049–50 (internal quotation marks omitted). Second, we have held that the same error also "deprived the alien of the opportunity for judicial review," § 1326(d)(2), because an alien who is not made aware of "his or her apparent eligibility" for relief, § 1240.11(a)(2), has had no "meaningful opportunity to appeal" the removal and seek such relief. *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000); *see also United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004). Finally, we have concluded that an underlying removal order is "fundamentally unfair" for purposes of § 1326(d)(3) if "(1) [an alien's] . . . due process rights were

I–864), executed on behalf of an applicant for admission or for adjustment of status, in accordance with the provisions of section 213A of the Act and 8 CFR part 213a.

violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Ubaldo-Figueroa*, 364 F.3d at 1048 (internal quotation marks omitted). We have held that the IJ's failure to inform the alien of potential relief in violation of § 1240.11(a)(2) meets the first prong of this test, and an alien may meet the second prong by demonstrating "that he had a 'plausible' ground" for that potential relief. *Id.* at 1050 (quoting *Arrieta*, 224 F.3d at 1079).

In sum, the IJ's duty under § 1240.11(a)(2) to "inform the alien of his or her apparent eligibility" to apply for certain discretionary relief may be the centerpiece of a collateral challenge under § 1326(d). A violation of this duty (1) excuses the alien from § 1326(d)(1)'s exhaustion requirement; (2) satisfies § 1326(d)(2)'s deprivation of judicial review requirement; and also (3) serves as a due process violation that goes halfway to demonstrating that the removal proceeding was "fundamentally unfair," as demanded by § 1326(d)(3).

## B

The IJ's duty under § 1240.11(a)(2) is of critical importance in analyzing whether Vidal-Mendoza may collaterally attack his removal order under § 1326(d). We recently examined the scope of this duty as an en banc court in *Lopez-Velasquez*, and are guided by its analysis here.

*Lopez-Velasquez* involved an alien's collateral challenge to his removal order on the ground that the IJ failed to inform him of his "apparent eligibility" for discretionary relief under former § 212(c) of the Immigration and Nationality Act. *Lopez-Velasquez*, 629 F.3d at 896 (internal quotation marks

omitted).   At the time of his removal proceeding, Lopez-Velasquez was "unquestionably" ineligible for § 212(c) relief because "longstanding Ninth Circuit and BIA precedent" provided that he had not accrued seven years of domicile in the U.S. from the date he became a lawful permanent resident, as required by § 212(c).   *Id.* at 897–98.   A case decided a year after Lopez-Velasquez's removal proceedings, however, made a "deviation" from our long-established precedent and suggested that an alien could begin accruing time to meet this domicile requirement starting at an earlier date.   *Id.* at 898, 900–01 (noting that, as of the removal hearing, there had been "no suggestion from the BIA or this court" for such a "change in law").   Relying on this post-removal precedent, Lopez-Velasquez argued that the IJ violated the regulatory duty to inform him of his apparent eligibility for § 212(c) relief at the time of the removal hearing and, therefore, that removal could not be used to support an indictment for illegal reentry.   *Id.* at 898–99.

We rejected this argument, holding that "an IJ's duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief *at the time of the hearing*."   *Id.* at 895 (emphasis added).   Because Lopez-Velasquez was not eligible for relief "under the applicable law at the time of his deportation hearing," and "would become eligible only with a change in law," we determined that he was correctly informed at his removal hearing.   *Id.* at 897, 901.[5]

---

[5] *Lopez-Velasquez* also rejected the alien's collateral challenge to the removal order on the ground that he would be ineligible for relief even if the post-removal decision were considered.   *Lopez-Velasquez*, 629 F.3d at 899.   Although Vidal-Mendoza argues that *Lopez-Velasquez*'s clarification of the IJ's duty to inform is therefore merely dicta, we disagree.   It is well-established that "where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum."

Thus *Lopez-Velasquez* reiterates two correlative principles regarding the IJ's duty under § 1240.11(a)(2). First, an IJ must provide accurate information regarding an alien's eligibility for relief "under the applicable law at the time of his deportation hearing," *id.* at 897. We have applied this principle to uphold a defendant's collateral challenge to a prior removal order where the IJ erred in applying existing law and the error was prejudicial. *See, e.g.*, *Pallares-Galan*, 359 F.3d at 1091. In *Pallares-Galan*, the defendant collaterally challenged a prior deportation order because the IJ had informed him that his prior conviction under California Penal Code section 647.6(a) constituted "sexual abuse of a minor" and that, as a result, he was ineligible for relief. *See id.* at 1092–93. Applying the categorical and modified categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990), we held that "under the ordinary meaning of its statutory terms, as well as under the California Supreme Court's understanding of its provisions, § 647.6(a) is significantly broader than" the federal definition of "sexual abuse of a minor," *Pallares-Galan*, 359 F.3d at 1100–01, and that the judicially cognizable documents in the record were insufficient to establish, under the modified categorical approach, that the defendant had committed such an offense, *id.* at 1103. Accordingly, the defendant's prior offense did not constitute "sexual abuse of a minor" under either the categorical or modified categorical approach. *Id.* Because the IJ's misapplication of existing precedent resulted in his failure to inform the defendant of his "apparent eligibility"

---

*Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949). Moreover, *Lopez-Velasquez*'s articulation of the scope of an IJ's duty to inform is "the law of the circuit, regardless of whether it was in some technical sense 'necessary' to our disposition of the case." *Barapind v. Enomoto*, 400 F.3d 744, 751 (9th Cir. 2005) (en banc).

for relief, we held that the deportation proceeding "deprived [the defendant] of a meaningful opportunity for judicial review." *Id.*

Second, by the same token, an IJ need not anticipate future "change[s] in law" when determining an alien's "apparent eligibility" for relief from removal. *Lopez-Velasquez*, 629 F.3d at 901. This rule likewise comports with our long-stated principle that "IJs are not expected to be clairvoyant" when discharging their duty to inform. *Id.* at 900 (quoting *Moran-Enriquez v. INS*, 884 F.2d 420, 422 (9th Cir. 1989)); *see also United States v. Moriel-Luna*, 585 F.3d 1191, 1198 (9th Cir. 2009) ("[O]ur precedent does not require that an IJ act creatively to advise an immigrant of ways in which his legal prospects at forestalling deportation might improve with fundamental changes in his status.").

Finally, *Lopez-Velasquez* also indicated a "narrow exception[]" to the general principle that the IJ need not anticipate post-removal changes in the law. *Lopez-Velasquez*, 629 F.3d at 895. We provided only one example of such "narrow circumstances" where we have "applied subsequent precedent in reviewing a deportation order" under § 1326(d): our decision in *United States v. Leon-Paz*, 340 F.3d 1003 (9th Cir. 2003).

*Leon-Paz* also involved an alien's collateral challenge to his removal order on the ground that the IJ failed to inform him of his "apparent eligibility" for discretionary relief under § 212(c). 340 F.3d at 1005. At the time of his removal hearing, Congress had changed the law to limit the availability of § 212(c) relief for aliens convicted of aggravated felonies, but we had not yet weighed in on whether these statutory changes were applicable retroactively

to aliens like Leon-Paz. *See id.* at 1006–07. Shortly after Leon-Paz's removal hearing, the Supreme Court held that these changes applied prospectively only. *INS v. St. Cyr*, 533 U.S. 289, 326 (2001); *see also Magana-Pizano v. INS*, 200 F.3d 603, 611 (9th Cir. 1999). *St. Cyr* made clear that the statutory changes regarding § 212(c) did not apply to Leon-Paz, and that he had been apparently eligible for such relief at the time of his removal hearing. *See Leon-Paz*, 340 F.3d at 1006. Accordingly, we determined that in these "narrow circumstances," subsequent precedent required us to conclude that the IJ committed an error of law by failing to inform Leon-Paz of his apparent eligibility for relief.[6] *Lopez-Velasquez*, 629 F.3d at 899; *see also Ubaldo-Figueroa*, 364 F.3d at 1050–51 (applying *St. Cyr* to hold that an IJ failed to inform an alien of his "apparent eligibility" for § 212(c) relief).

This narrow exception "where subsequent precedent renders a deportation order invalid" was not present in *Lopez-Velasquez*. 629 F.3d at 895. As described earlier, the post-removal precedent in *Lopez-Velasquez* did not make clear that the alien was apparently eligible for relief at the time of his removal proceeding; it was not analogous to the post-removal precedent in *Leon-Paz*, for example, which held that a statutory change applied prospectively only. Rather, the post-removal precedent in *Lopez-Velasquez* created a new, previously unavailable, possibility of relief by making a

---

[6] Because only the federal courts, and not the BIA, have the authority to determine a "question of statutory retroactivity," *Ledezma-Galicia v. Holder*, 636 F.3d 1059, 1067 (9th Cir. 2010), the IJ's duty to inform an alien of a "reasonable possibility" of the continued availability of § 212(c) relief was not eliminated by the BIA's conclusion on this issue, *see In re Soriano*, 21 I. & N. Dec. 516, 519 (BIA 1996).

"deviation" from "longstanding Ninth Circuit and BIA precedent." *See id*. at 898. Because this post-removal precedent created such a change in the law, we saw no basis for Lopez-Velasquez's claim that he had apparent eligibility for relief at the time of the hearing and we denied his collateral challenge to his removal order. *See id.* at 901.

## C

Notwithstanding *Lopez-Velasquez*, Vidal-Mendoza argues that, even if case law at the time of the removal hearing foreclosed an alien's eligibility for relief, judicial decisions explain what the statute has always meant and, thus, the IJ should be deemed to have violated the duty to inform at any point the alien becomes eligible for relief under a post-removal interpretation of the law. He supports this argument with citations to cases involving direct review of removal orders. *See, e.g.*, *Pelayo-Garcia v. Holder*, 589 F.3d 1010 (9th Cir. 2009).

We disagree. First, such an interpretation would require the IJ to inform an alien about relief for which the alien is apparently *in*eligible during the hearing. It would also require an IJ to give an alien the "opportunity to make application" for relief that was not available "during the hearing." *See* § 1240.11(a)(2). This interpretation is plainly illogical and inconsistent with the unambiguous language of § 1240.11(a)(2). *See also United States v. Garza-Sanchez*, 217 F.3d 806, 810 (9th Cir. 2000) (holding that a precursor of § 1240.11(a)(2) "did not require the IJ to inform [the alien] . . . of potential constitutional challenges to the immigration laws" because such challenges were not mentioned in the regulatory text). Because the IJ does not violate § 1240.11(a)(2) by failing to inform the alien of a future

interpretation of the law, it is not relevant that such an interpretation may be deemed to establish "what the meaning of the law always was" in some theoretical way.

Moreover, Vidal-Mendoza's interpretation would effectively transform a § 1326(d) collateral challenge into a direct appeal, because it would require courts to apply intervening changes in the law to the IJ's removal order in every case. But we do not review a collateral challenge to a removal order in the same manner as we review that order on a petition for review. *See Lopez-Velasquez*, 629 F.3d at 899. In *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169 (9th Cir. 2001), for example, we rejected an alien's collateral challenge to a removal order based on post-removal precedent because the "order was perfectly lawful under the law at the time [the alien] . . . was deported" and the alien had a right to challenge the application of that law on a petition for review. *Id.* at 1172–73. Thus, "[i]n general, when intervening law renders an alien eligible for discretionary relief for which he was ineligible at the time of his deportation hearing, the proper remedy is for the alien to file a motion to reopen." *Lopez-Velasquez*, 629 F.3d at 899–900 (internal quotation marks and alterations omitted).

Because we cannot depart from the plain language of § 1240.11(a)(2), nor conduct direct review of an alien's removal hearing under § 1326(d), we reject Vidal-Mendoza's argument, as well as his reliance on cases involving direct review of removal orders.

## III

We now apply these principles to the facts of this case. Vidal-Mendoza claims that the IJ had an obligation to inform

him of his apparent eligibility for voluntary departure because under *Estrada-Espinoza*, decided over four years after his removal hearing, his rape conviction did not constitute "sexual abuse of a minor," and, thus, was not an aggravated felony.    *Estrada-Espinoza*, 546 F.3d at 1160 (internal quotation marks omitted).

Our analysis is largely controlled by *Lopez-Velasquez*. We begin with the applicable law at the time of Vidal-Mendoza's 2004 removal hearing.    The relevant statute included the term "sexual abuse of a minor" in the definition of "aggravated felony," but provided no definition of the term.  8 U.S.C. § 1101(a)(43)(A).[7]

We provided such a definition in a series of cases dating back to 1999.  We first defined the term "sexual abuse of a minor" for purposes of § 1101(a)(43)(A) in *United States v. Baron-Medina*, 187 F.3d 1144 (9th Cir. 1999), where we applied the "ordinary, contemporary, and common meaning" of "sexual abuse of a minor," and concluded that any "use of young children for the gratification of sexual desires constitutes an abuse" because the "child [is] too young to understand the nature of [defendant's] . . . advances." *Id.* at 1146–47 (internal quotation marks omitted); *see also Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1065 (9th Cir. 2003).  We reiterated this holding four years later in *United States v. Pereira-Salmeron*, 337 F.3d 1148 (9th Cir. 2003), where we held that a conviction under a Virginia statute criminalizing intercourse with "a child . . . under fifteen years of age" constituted "sexual abuse of a minor." *Id.* at 1155 (internal quotation marks omitted); *cf. In re Rodriguez-*

---

[7] "The term 'aggravated felony' means," among other things, "murder, rape, or sexual abuse of a minor."  8 U.S.C. § 1101(a)(43)(A).

*Rodriguez*, 22 I. & N. Dec. 991, 995 (BIA 1999) (defining "sexual abuse of a minor" to include all offenses involving "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in . . . sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children"). This definition of "sexual abuse of a minor" was so well-established in our case law that even two years after Vidal-Mendoza's removal proceedings, we stated that "[t]his circuit consistently has held that statutory rape laws prohibiting sexual contact with a minor under 16 proscribe conduct constituting 'sexual abuse of a minor.'" *United States v. Lopez-Solis*, 447 F.3d 1201, 1205–06 (9th Cir. 2006) (citing *Pereira-Salmeron*, 337 F.3d at 1155).

In conjunction with establishing this broad definition of "sexual abuse of a minor," we consistently "reject[ed] any suggestion that the federal sexual abuse laws [18 U.S.C. §§ 2241–2248] . . . limit the class of state laws reached by the term" because the statute did not specifically cross-reference those federal offenses. *Baron-Medina*, 187 F.3d at 1146; *see also Cedano-Viera*, 324 F.3d at 1065 (specifically rejecting that 18 U.S.C. § 2243 limited the term "sexual abuse of a minor").

*Estrada-Espinoza* sharply departed from this precedent by holding that the federal sexual abuse laws, namely 18 U.S.C. § 2243, defined what it means for a crime to constitute "sexual abuse of a minor" for purposes of § 1101(a)(43)(A). *Estrada-Espinoza*, 546 F.3d at 1152. Relying on § 2243, *Estrada-Espinoza* held that "the generic offense of 'sexual abuse of a minor' requires four elements: (1) a mens rea level of knowingly; (2) a sexual act; (3) with a minor between the

ages of 12 and 16; and (4) an age difference of at least four years between the defendant and the minor." *Id.*[8]

Accordingly, at the time of Vidal-Mendoza's removal hearing, he was ineligible for voluntary departure because his Oregon rape offense constituted a conviction for "sexual abuse of a minor" and an aggravated felony under § 1101(a)(43)(A). Vidal-Mendoza does not argue otherwise. Similar to the alien in *Lopez-Velasquez*, his sole argument is that the IJ had an obligation to inform him of his apparent eligibility for voluntary departure under *Estrada-Espinoza*, a case decided after his removal hearing. *See Lopez-Velasquez*, 629 F.3d at 897.

We reject his contention because this case does not present the "narrow circumstances" where we may consider post-removal precedent. Unlike *St.Cyr*, *Estrada-Espinoza* did not make clear that Vidal-Mendoza was apparently eligible for relief at the time of his removal hearing. Rather, *Estrada-Espinoza* was a "deviation" from "longstanding Ninth Circuit and BIA precedent." *Lopez-Velasquez*, 629 F.3d at 898. As described above, at the time of Vidal-Mendoza's removal hearing, "there was no suggestion from the BIA or this court that the definition [of 'sexual abuse of a minor'] could be different" because both had rejected the very definition eventually adopted in *Estrada-Espinoza*. *Lopez-Velasquez*, 629 F.3d at 900; *see also Baron-Medina*, 187 F.3d at 1146;

---

[8] We subsequently clarified that *Estrada-Espinoza*'s definition "encompassed statutory rape crimes only" and, therefore, was not the sole federal generic definition of "sexual abuse of a minor." *United States v. Medina-Villa*, 567 F.3d 507, 514 (9th Cir. 2009). In so limiting *Estrada-Espinoza*, we revived in part the definition of "sexual abuse of a minor" set forth in *Baron-Medina*. *See Pelayo-Garcia*, 589 F.3d at 1013–14.

*Cedano-Viera*, 324 F.3d at 1065; *cf. Rodriguez-Rodriguez*, 22 I. & N. Dec. at 994. Thus, because *Estrada-Espinoza* was a clear "change in law," it provides no basis for us to conclude on collateral review that the IJ committed an "error of law" at the time of Vidal-Mendoza's removal hearing. *Lopez-Velasquez*, 629 F.3d at 899, 901.

Because Vidal-Mendoza lacked "apparent eligibility" for relief "under the applicable law at the time of his [removal] . . . hearing" and potentially became eligible for such relief only through *Estrada-Espinoza*'s post-removal "change in law," we hold that the IJ correctly informed Vidal-Mendoza that he was not apparently eligible for voluntary departure at the time of his 2004 removal hearing. *See Lopez-Velasquez*, 629 F.3d at 900–01; 8 C.F.R. § 1240.11(a)(2). In short, we cannot conclude that the removal proceedings violated his due process rights merely because the law at the time was unfavorable to him.

## IV

Vidal-Mendoza can invoke neither the "narrow circumstances" set forth by *Lopez-Velasquez* nor the principles applicable to direct review of deportation orders. Accordingly, our collateral review of his removal proceedings is limited to a single question: did the IJ inform Vidal-Mendoza of all relief from removal for which he was apparently eligible at the time of removal hearing? The answer is "yes." The law at the time of his deportation clearly indicated that his previous rape conviction constituted the aggravated felony of "sexual abuse of a minor" and therefore Vidal-Mendoza was correctly informed that he was

ineligible for voluntary departure.[9]  As a result, he received due process and his waiver of appeal rights was considered and intelligent.

We, therefore, deny his collateral challenge to his prior removal order because he has not satisfied any of § 1326(d)'s requirements:   he has not "exhausted any administrative remedies that may have been available to seek relief against the order," he has not demonstrated that the prior removal proceedings "improperly deprived [him] . . . of the opportunity for judicial review," and the entry of the removal order was not "fundamentally unfair." § 1326(d)(1)–(3).

**REVERSED AND REMANDED.**

---

[9] Because we conclude that the IJ correctly informed Vidal-Mendoza that his Oregon conviction constituted an aggravated felony under the law at the time of Vidal-Mendoza's deportation, we need not reach the government's alternative argument that, even applying *Estrada-Espinoza*, the IJ's duty to inform was not triggered because Vidal-Mendoza's conviction meets *Estrada-Espinoza*'s generic definition for "sexual abuse of a minor" under the modified categorical test.