**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

RAUL GUZMAN-IBAREZ, AKA Raul
Guzman, Raul Ibarez Guzman, Jr.,
Raul Ibarez, Raul Guzman Ibarez,
Jr., Little Playboy, Manuel Torres,
Miguel Duran Torres,
*Defendant-Appellant*.

No. 14-50142

D.C. No.
2:12-cr-00843-
DMG-1

OPINION

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted
June 2, 2015—Pasadena, California

Filed July 6, 2015

Before: Ferdinand F. Fernandez, Raymond C. Fisher,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Fernandez;
Partial Concurrence and Partial Dissent by Judge Fisher

## SUMMARY[*]

### Criminal Law

The panel vacated a conviction and sentence for illegal reentry after deportation or removal in violation of 18 U.S.C. § 1326 and remanded for the district court to consider whether the defendant was prejudiced by the deprivation of his due process rights in his removal proceeding.

The panel rejected the contention that the defendant's due process rights were violated because his first degree robbery conviction did not qualify as an "aggravated felony" when his immigration proceedings began in 1995, and therefore the immigration judge ("IJ") erred in finding him deportable based on that offense. The panel held that the new definition set forth in § 321(a) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), making theft offenses aggravated felonies so long as the defendant was sentenced to one year or more in prison, rather than five years or more, applied when the IJ acted in 1999 by entering a removal order.

The panel held that the IJ erred when she failed to advise the defendant of the possibility of relief under 8 U.S.C. § 1182(c). The panel explained that § 440(d) of the Antiterrorism and Effective Death Penalty Act was not effective as to proceedings, such as the defendant's, that had commenced prior to the date of the Act's enactment. In addition, the provision of IIRIRA that eliminated relief under

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 1182(c) did not apply to aliens, like the defendant, whose proceedings had commenced before the enactment of IIRIRA. The panel vacated the defendant's conviction and sentence and remanded for the district court to consider whether he was prejudiced by the deprivation of his due process rights in his 1999 removal proceeding. The panel stated that if the defendant was not prejudiced, then the district court could reinstate his conviction and sentence. If the defendant was prejudiced, then the district court must dismiss the indictment.

The panel held that the IJ did not err or deprive the defendant of due process when she failed to advise him of the possibility of relief under 8 U.S.C. § 1182(h).

Judge Fisher concurred in Parts A and B of the opinion. Dissenting from Part C, he wrote that in addition to informing the defendant about his eligibility for relief under § 1182(c), the IJ should have advised him of his apparent eligibility for § 1182(h) relief.

---

## COUNSEL

James H. Locklin (argued), Deputy Federal Public Defender; Hilary L. Potashner, Federal Public Defender, Federal Public Defender's Office, Los Angeles, California, for Defendant-Appellant.

Cassie D. Palmer (argued), Assistant United States Attorney, General Crimes Section; Stephanie Yonekura, Acting United States Attorney; Robert E. Dugdale, Assistant United States Attorney, Chief, Criminal Division, Office of

the United States Attorney, Los Angeles, California, for
Plaintiff-Appellee.

**OPINION**

FERNANDEZ, Circuit Judge:

Raul Guzman-Ibarez appeals his conviction and sentence
for illegal reentry after deportation or removal. *See* 8 U.S.C.
§ 1326. Specifically, he asserts that his indictment should
have been dismissed by the district court because he was
denied due process at his deportation hearing on August 25,
1999, which precludes use of the deportation order in a
criminal proceeding. *See id.* § 1326(d). We vacate his
conviction and sentence and remand.

*BACKGROUND*

Guzman was born in Mexico, but came to the United
States in 1979, when he was about six years old. He became
a Legal Permanent Resident ("LPR") on July 13, 1989. He
was far from being a perfect peregrine; rather, he committed
numerous crimes and on December 21, 1995, a deportation
proceeding was initiated against him. Undeterred, he
committed a robbery in California, was convicted of first
degree robbery[1] on February 14, 1997, and was sentenced to
four years' imprisonment as a result. Because state criminal
proceedings necessitated a delay in the deportation
proceeding, it was administratively closed in 1997. Guzman
served his term, and the deportation proceeding was

---

[1] *See* Cal. Penal Code §§ 211, 212.5(a).

reopened. On August 12, 1999, the robbery conviction was added to the charges supporting his deportation. On August 25, 1999, the immigration judge (IJ) found that he was deportable as an alien convicted of an aggravated felony (8 U.S.C. § 1227(a)(2)(A)(iii)) and a firearm offense (8 U.S.C. § 1227(a)(2)(C)), and that he was ineligible for discretionary relief based upon his robbery conviction. Guzman waived his right to appeal. He was deported.[2]

Guzman paid no more attention to the laws of the United States than he paid to the laws of the State of California; he reentered and was deported again in 2000, 2002, 2004 and 2010 based on the initial 1999 deportation. But ours is a patient polity, and it was not until Guzman was found here in July of 2012 that the current criminal proceeding was commenced against him for violation of 8 U.S.C. § 1326(a).

Guzman moved to dismiss the indictment on the basis that his due process rights had been violated in the 1999 deportation proceeding because he had not been informed of the availability of potential discretionary relief under the provisions of 8 U.S.C. § 1182(c) (Immigration and Nationality Act ("INA") § 212(c)), and 8 U.S.C. § 1182(h) (INA § 212(h)). The district court denied the motion, found Guzman guilty of the offense charged, and sentenced him to imprisonment for 33 months. This appeal followed.

*JURISDICTION AND STANDARDS OF REVIEW*

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

[2] We recognize that removal is the term used currently, but we use deportation throughout to avoid any undue complexity or confusion.

We review de novo a collateral attack on a prior deportation order in a prosecution under 8 U.S.C. § 1326. *See United States v. Vidal-Mendoza*, 705 F.3d 1012, 1014 (9th Cir. 2013). We may affirm the district court's denial of a motion to dismiss an indictment on any basis supported by the record. *See United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003).

## *DISCUSSION*

The parties agree that if neither the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA") nor the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009–546 ("IIRIRA") had been enacted, Guzman would not have stood convicted of an aggravated felony under the law as it previously existed[3] and would have been entitled to consideration for waiver of deportation.[4]

Thus, as is true of the situation of many LPRs, timing in this case is everything. To briefly recapitulate the timeline here: deportation proceedings commenced December 21, 1995; the AEDPA was enacted April 24, 1996;[5] IIRIRA was enacted September 30, 1996;[6] Guzman was convicted and sentenced for first degree robbery February 14, 1997;

---

[3] *See* 8 U.S.C. § 1101(a)(43)(G) (1995).

[4] *See* 8 U.S.C. § 1182(c), (h) (1995).

[5] We will say more about effective dates hereafter.

[6] *Supra* n.5.

Guzman was ordered deported August 25, 1999. Guzman's motion to dismiss the indictment depends upon his ability to challenge the validity of his deportation order. That is constrained by the provisions of 8 U.S.C. § 1326(d).

Essentially, when the IJ violates the "duty under [8 C.F.R.] § 1240.11(a)(2) to inform the alien of his or her apparent eligibility to apply for certain discretionary relief [, that] may be the centerpiece of a collateral challenge under § 1326(d)." *Vidal-Mendoza*, 705 F.3d at 1016 (internal quotation marks omitted); *see also* 8 C.F.R. § 240.11(a)(2) (1999). More specifically, in order to challenge a removal order in a proceeding under § 1326, a defendant must first demonstrate that he "exhausted any administrative remedies that may have been available to seek relief against the order." *Id.* § 1326(d)(1). Where, as here, a defendant contends that "the IJ has failed to provide information about apparent eligibility for relief, we excuse the alien from demonstrating that the alien exhausted any administrative remedies that may have been available." *Vidal-Mendoza*, 705 F.3d at 1015 (internal quotation marks omitted). Next, a defendant must demonstrate that the deportation proceedings in which the order was issued improperly "'deprived [him] of the opportunity for judicial review.'" *Id.*; *see also* 8 U.S.C. § 1326(d)(2). An IJ's failure to inform an alien regarding apparent eligibility for relief deprives the alien of the opportunity for judicial review. *See Vidal-Mendoza*, 705 F.3d at 1015. Finally, a defendant must demonstrate that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3). An underlying deportation order is fundamentally unfair if: (1) the defendant's "due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the

defects." *See Vidal-Mendoza*, 705 F.3d at 1015–16 (internal quotation marks omitted).

Guzman asserts that the IJ did, indeed, fail to properly advise him regarding his eligibility for relief. He also argues that the IJ's basis for finding him deportable was fundamentally flawed.

### (A)    *Aggravated Felony*

Guzman asserts for the first time on appeal that his due process rights were violated because his first degree robbery conviction did not qualify as an "aggravated felony" when his immigration proceedings began in 1995, and therefore the IJ erred in finding him deportable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) based on that offense.[7] We disagree.

Because he did not raise that specific issue before trial or show good cause for not having done so, we would normally treat the issue as waived. *See* Fed. R. Crim. P. 12(b)(3), (c)(3); *United States v. Anderson*, 472 F.3d 662, 669–70 (9th Cir. 2006); *United States v. Murrillo*, 288 F.3d 1126, 1135 (9th Cir. 2002). However, because the issue is basically a pure issue of law and, more importantly, because we must consider the aggravated felony question in any event, we will review the issue. *See United States v. Flores-Montano*, 424 F.3d 1044, 1047 (9th Cir. 2005) (per curiam).

---

[7] The parties agree that Guzman was not deportable on the basis of the concealed weapon offense. Thus, we do not further consider that issue at this time, except to note that upon remand the district court should not rely upon that offense either.

When the proceeding against Guzman commenced in 1995, a theft offense, like robbery, was an aggravated felony if the term of imprisonment imposed upon the defendant was at least five years. *See* 8 U.S.C. § 1101(a)(43)(G) (1995). Under that provision, his robbery conviction would not constitute an aggravated felony because he was sentenced to a term of four years. However, before he pled guilty to the robbery offense, IIRIRA § 321(a) made theft offenses aggravated felonies so long as the defendant was sentenced to one year or more in prison, rather than five years or more. *See* 8 U.S.C. § 1101(a)(43)(G) (1996). That new definition applies to convictions "before, on, or after the date of enactment." IIRIRA § 321(b). Moreover, as we have previously determined, the new definition applies when an IJ takes action "on or after the date of the enactment." *Id.* at (c); *see also Park v. INS*, 252 F.3d 1018, 1025 (9th Cir. 2001) *overruled on other grounds by Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1127 (9th Cir. 2006) (en banc); *Ortiz v. INS*, 179 F.3d 1148, 1155–56 (9th Cir. 1999); *Valderrama-Fonseca v. INS*, 116 F.3d 853, 854–56 (9th Cir. 1997).[8] As we have said: "'actions taken' refers to orders and decisions issued against an alien by the Attorney General acting through the BIA or Immigration Judge. This makes logical and practical sense, as 'actions taken' is easily understood to encompass things done by an agency to an alien." *Valderrama-Fonseca*, 116 F.3d at 856.

---

[8] Guzman asks that we overrule our prior cases which explain the meaning of "actions taken." *See Saqr v. Holder*, 580 F.3d 414, 422 (6th Cir. 2009) (holding that the phrase refers to the commencement of a proceeding only). That, of course, we cannot do. *See Avagyan v. Holder*, 646 F.3d 672, 677 (9th Cir. 2011).

Therefore, by the time the IJ acted on August 25, 1999, by entering a removal order, she correctly decided that Guzman's robbery conviction was an aggravated felony because the term of imprisonment for his offense exceeded one year.

(B)    *INA § 212(c) Relief*

Guzman next argues that the IJ erred, and violated his due process rights, when she failed to advise him of the possibility of relief under 8 U.S.C. § 1182(c) (INA § 212(c)). We agree that the IJ erred. *See United States v. Muro-Inclan*, 249 F.3d 1180, 1183–84 (9th Cir. 2001).

When the proceedings against Guzman commenced, consideration for waiver of deportation pursuant to 8 U.S.C. § 1182(c) (1995) (INA § 212(c)) was available.[9] However, the AEDPA was enacted a few months later and under its provisions § 1182(c) was amended to entirely eliminate the phrase "served for such felony . . . a term of imprisonment of at least 5 years." AEDPA § 440(d). However, as we have previously held, the § 440(d) provision was not effective as to proceedings which had commenced prior to the date of its enactment. *See Magana-Pizano v. INS*, 200 F.3d 603, 611 (9th Cir. 1999). In other words, when Guzman pled guilty to

---

[9] The section provided for discretionary relief, but excluded relief for "an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years."

first degree robbery, the protections previously offered by § 1182(c) remained in full force and effect.[10]

By the time Guzman pled guilty, IIRIRA had also been enacted and it eliminated relief under § 1182(c) (INA § 212(c)). IIRIRA § 304(b). However, that provision did not apply to aliens, like Guzman, whose proceedings had commenced before the enactment of IIRIRA. *See Pascua v. Holder*, 641 F.3d 316, 321 (9th Cir. 2011).

In other words, at the time Guzman pled guilty, for him the § 1182(c) relief provision was "in full bloom, [and] the amending and repealing statutes did not retroactively take away that provision." *United States v. Leon-Paz*, 340 F.3d 1003, 1006 (9th Cir. 2003).

In short, the IJ erred when she failed to tell Guzman of the possibility that § 1182(c) (INA § 212(c)) relief was available; that violated his due process rights. Moreover, "the district court erred when it held to the contrary." *Leon-Paz*, 340 F.3d at 1007.

---

[10] We recognize that at that time and at the time the IJ acted, the Board of Immigration Appeals (BIA) had determined that the provisions of § 440(d) did apply to cases like Guzman's. *See In re Soriano*, 21 I. & N. Dec. 516, 519 (B.I.A. 1996) *overruled by Magana-Pizano*, 200 F.3d at 611 n.11. Nevertheless, the IJ knew, or should have known, that we had not yet addressed the retroactivity question and, therefore, that the BIA's ruling did not obviate her duty to inform Guzman of the § 1182(c) possibility. *See Vidal-Mendoza*, 705 F.3d at 1017–18, 1018 n.6. ("Because only the federal courts, and not the BIA, have the authority to determine a 'question of statutory retroactivity,' the IJ's duty to inform an alien of a 'reasonable possibility' of the continued availability of § 212(c) relief was not eliminated by the BIA's conclusion on this issue." (citations omitted)).

That leaves the issue of prejudice to be resolved. The issue was not addressed by the district court, but should now be considered by it. *See id.* As we declared in *Leon-Paz*, *id.*:

> We, therefore, vacate [Guzman's] conviction and sentence, and remand the case to the district court so that it can consider whether [Guzman] was prejudiced by the deprivation of his due process rights in his [1999] removal proceeding. If he was not prejudiced, the district court may reinstate the conviction and sentence. If he was prejudiced, the district court must dismiss the indictment.

(C)      *INA § 212(h) Relief*

Guzman finally argues that the IJ erred, and violated his due process rights, when she failed to advise him of the possibility of relief under 8 U.S.C. § 1182(h) (INA § 212(h)).[11] We do not agree.

Because he had committed an aggravated felony, that would preclude him from relief if he was an LPR who had been "lawfully admitted for permanent residence." 8 U.S.C. § 1182(h) (1999) (INA § 212(h)). Guzman was not admitted

---

[11] The section as modified by IIRIRA § 348 provides for waiver of inadmissibility for aliens whose denial of admission "would result in extreme hardship to [a] United States citizen or lawfully resident spouse, parent, son or daughter of such alien." § 1182(h)(1)(B). But: "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony." § 1182(h) (closing paragraph).

as an LPR; he became one some ten years after he entered the United States. Nevertheless, commencing before the IJ decided Guzman's case[12] and for over a decade thereafter, the BIA interpreted that phrase to include those who were accorded LPR status after their admission.[13] According to that interpretation, Guzman would not be eligible for § 1182(h) consideration. But in 2010, we decided that "admitted" meant what that word normally means, that is, at entry only; it did not include those who later become LPRs on one basis or another. *See Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1051 (9th Cir. 2014); *see also Hing Sum v. Holder*, 602 F.3d 1092, 1096 (9th Cir. 2010). We do not question that decision[14] and it certainly would entitle Guzman to § 1182(h) consideration if he were before the IJ at this time.

---

[12] *See In re Rosas-Ramirez*, 22 I. & N. Dec. 616, 618–19 (B.I.A. 1999) (interpreting the phrase as used in INA § 237(a)(2)(A)(iii)); *see also* 8 U.S.C. § 1101(a)(20).

[13] *See In re Koljenovic*, 25 I. & N. Dec. 219, 220–21 (B.I.A. 2010) (interpreting the phrase in INA § 212(h) specifically), *overruled by In re J-H-J-*, 26 I. & N. Dec. 563, 564–65 (BIA 2015) (withdrawing from decision in light of "overwhelming circuit court authority").

[14] Interestingly enough, we had previously interpreted the phrase to encompass those who were lawfully admitted at any time; not just at entry. *See Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1015 (9th Cir. 2006); *Shivaraman v. Ashcroft*, 360 F.3d 1142, 1147 (9th Cir. 2004); *Ocampo-Duran v. Ashcroft*, 254 F.3d 1133, 1134–35 (9th Cir. 2001). Like *Rosas-Ramirez*, those cases were not considering § 212(h) as such. We mention them here solely for the purpose of pointing out that the restriction which we later discovered in the language of § 212(h), which limited that section to those who were admitted as LPRs at the border, was far from obvious ten years earlier.

However, what we are concerned with here is whether the IJ had to predict that possibility when she advised Guzman of his rights in 1999. We think not. As we have previously declared, with narrow exceptions,[15] "an IJ's duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief at the time of the hearing." *United States v. Lopez-Velasquez*, 629 F.3d 894, 895 (9th Cir. 2010) (en banc). The change wrought by our decision was one of substantive law about which clairvoyance could not have been expected of the IJ. *See Vidal-Mendoza*, 705 F.3d at 1017; *Lopez-Velasquez*, 629 F.3d at 900. Thus, Guzman's due process rights were not violated when the IJ failed to advise him of possible relief under § 212(h). The IJ could not have been expected to know that relief might be possible under the circumstances.

## *CONCLUSION*

While we do not intend to vilipend legislative efforts in this area of the law, we must say that, as is all too often the case, it has taken a good deal of concentrated praxis to wend our way through the maze of overlapping statutory commands that affect the seemingly simple question of whether an IJ was a seer who could discover what Guzman had to be told at the time of his hearing before her. We have determined that the IJ correctly decided that Guzman's robbery conviction was an aggravated felony, and did not err when she failed to inform him that he might be entitled to relief under 8 U.S.C. § 1182(h) (INA § 212(h)). However, she did err when she failed to inform him that he might be entitled to relief under 8 U.S.C. § 1182(c) (INA § 212(c)). Thus,

---

[15] *See* discussion in part (B) of this opinion regarding the narrow exception for retroactivity decisions.

because he was denied due process in that respect, if he was also prejudiced as a result, the indictment for violation of 8 U.S.C. § 1326 must be dismissed. Therefore, we vacate his conviction and sentence and remand to the district court for further proceedings.

**VACATED** and **REMANDED**.

FISHER, Circuit Judge, concurring in part and dissenting in part:

I concur fully in Parts A and B of the opinion, but I respectfully disagree with the analysis in Part C. In addition to informing Guzman about his eligibility for § 212(c) relief, the IJ should have advised him he was eligible for § 212(h) relief.

Section 212(h) prohibits relief only for "an alien who has *previously been admitted* to the United States *as an alien lawfully admitted for permanent residence* if . . . since the date of such admission the alien has been convicted of an aggravated felony." 8 U.S.C. § 1182(h) (emphasis added). Relying on *In re Rosas-Ramirez*, 22 I. & N. Dec. 616, 618–19 (BIA 1999), the opinion concludes the IJ had no obligation to inform Guzman of his eligibility for § 212(h) relief because the term "admitted" includes adjustments of status.

*Rosas* is inapposite. There, the BIA analyzed the meaning of "admission" in the specific statutory context of INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "[a]ny alien who is convicted of an aggravated felony at any time *after admission* is deportable." 22 I. & N.

at 617 (emphasis added). The BIA concluded "the reference in section 237(a)(2)(A)(iii) of the Act to 'after admission' includes both those aliens who are 'admitted' at the time of entry . . . as well as those who are 'lawfully admitted for permanent residence.'" *Id.* at 623. Under this definition, the BIA held "the respondent's adjustment of status . . . constituted an 'admission' to the United States *as that term is used in section 237(a)(2)(A)(iii).*" *Id.* (emphasis added). Immediately after this sentence, the BIA included a footnote in which it stated: "We do not here attempt to resolve the meaning of 'admission' in other contexts." *Id.* at 623 n.5.[1]

Unlike the provision interpreted in *Rosas*, § 212(h) contains *both* the terms "previously been admitted" and "lawfully admitted for permanent residence." Under the INA's own definitions – of which the IJ presiding over Guzman's hearing would have undoubtedly been aware – these terms have different meanings. "Admitted" means "the lawful entry of an alien into the United States after inspection and authorization," *see* 8 U.S.C. § 1101(a)(13)(A), whereas "lawfully been admitted for permanent residence" means "the status of having been lawfully accorded the privilege of residing permanently in the United States," *see* 8 U.S.C. § 1101(a)(20). If an adjustment of status could constitute an "admission" under § 212(h), as the opinion concludes, the phrase "previously been admitted" in § 212(h) would be superfluous. The provision could simply have prohibited relief for "an alien lawfully admitted for permanent residence if, since the date of such admission, the alien has been

---

[1] Only in 2010 did the BIA explicitly extend *Rosas* to the § 212(h) context. *See Matter of Koljenovic*, 25 I. & N. 25 I. & N. Dec. 219, 222 (BIA 2010), *withdrawn by Matter of J-H-J-*, 26 I. & N. Dec. 563 (BIA 2015).

convicted of an aggravated felony." But § 212(h) refers to "an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence," meaning a noncitizen who was granted lawful entry into the United States *as* a lawful permanent resident. Under this reading, Guzman could not have fallen within the purview of § 212(h)'s prohibition because he had not entered the United States as an LPR.

Given the significant difference in the statutory provision interpreted in *Rosas* and the one at issue here, the IJ had a duty to inform Guzman of his apparent eligibility for § 212(h) relief under the INA's own definitions of the relevant terms. "We have interpreted 'apparent eligibility' to mean 'where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws – as IJs no doubt are – raises a reasonable possibility that the petitioner *may be eligible* for relief.'" *United States v. Lopez-Velasquez*, 629 F.3d 894, 896 (9th Cir. 2010) (en banc) (emphasis added). Here, the IJ was faced with a situation in which the INA's own definitions of the relevant terms compelled the conclusion that Guzman remained eligible for 212(h) relief, whereas the interpretation of "admission" in *Rosas* merely suggested Guzman might not be eligible, *if* the BIA chose to extend that interpretation to the context of 212(h), which it had not done.

The opinion relies on *Lopez-Velasquez* and *Vidal-Mendoza* for the proposition that the IJ could not have been expected to inform Guzman of his eligibility for § 212(h) relief. But in those cases, our ex post interpretation of the relevant statutory term upended the definition that governed at the time of the hearing. For example, in *United States v. Vidal-Mendoza*, 705 F.3d 1012 (9th Cir. 2013), the petitioner

argued his conviction for third-degree rape did not constitute "sexual abuse of a minor" under an en banc decision postdating his removal order. *Id.* at 1019. We rejected the petitioner's argument, concluding the decision "deviat[ed] from longstanding Ninth Circuit and BIA precedent," and therefore the IJ could not have been expected to advise the petitioner about it. *See id.* at 1020 (internal quotation marks omitted). Similarly, in *Lopez-Velasquez*, 629 F.3d at 894, we concluded the definition of "domicile" in a decision postdating the petitioner's removal was a "deviation" from established precedent, and therefore the IJ did not erroneously advise the petitioner he was ineligible for certain relief. *Id.* at 898.

In *Vidal-Mendoza* and *Lopez-Velasquez*, the IJ could not have been reasonably expected to inform the petitioners they were eligible for such relief because they were unquestionably *ineligible* under governing law at the time of their proceedings. Here, by contrast, *Rosas'* interpretation of an entirely different statutory provision did not govern in the context of § 212(h), and the definitions contained within the INA required concluding that Guzman was eligible for such relief. Under these circumstances, I cannot agree that "[t]he IJ could not have been expected to know that relief might be possible."

At the time of Guzman's hearing, § 212(h) relief was "reasonably possible" under the statutory definitions, and the IJ should have so advised him. I would therefore hold the removal order is constitutionally infirm both on § 212(c) and § 212(h) grounds.