**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee*,

v.

JORGE AGUILERA-RIOS,
        *Defendant-Appellant*.

No. 12-50597

D.C. No.
3:11-cr-02734-H-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
February 7, 2014—Pasadena, California

Filed June 17, 2014
Amended September 29, 2014

Before: Harry Pregerson, Michael R. Murphy[*],
and Marsha S. Berzon, Circuit Judges.

Order;
Opinion by Judge Berzon

---

[*] The Honorable Michael R. Murphy, Senior Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel filed a superseding amended opinion reversing a conviction for illegal reentry in a case in which the defendant contended that, after *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), his prior removal order was invalid because it was based on a conviction for unlawful firearms possession under California Penal Code § 12021(c)(1), which lacked an antique firearms exception and thus was not a categorical match for the Immigration and Nationality Act's firearms offense described in 8 U.S.C. § 1227(a)(2)(C).

The panel found that the defendant showed good cause to excuse his failure to raise his *Moncrieffe* argument in the district court, and therefore declined to find the argument waived. The panel rejected the government's argument that this court cannot retroactively consider *Moncrieffe* in evaluating whether the defendant was removable as charged.

The panel held that because § 12021(c)(1) does not have an antique firearms exception, and California prosecutes offenses involving antique firearms, a conviction under that statute is not a categorical match for the firearms offense described in § 1227(a)(2)(C), and the underlying removal order was invalid.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kara Hartzler, Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Mark R. Rehe (argued) and Bruce R. Castetter, Assistant United States Attorneys, San Diego, California, for Plaintiff-Appellee.

**ORDER**

The opinion filed on June 17, 2014, is hereby amended. The superseding amended opinion will be filed concurrently with this order. No further petitions for rehearing or petitions for rehearing en banc will be entertained.

**OPINION**

BERZON, Circuit Judge:

Jorge Aguilera-Rios ("Aguilera"), a citizen of Mexico, was convicted of a California firearms offense, removed from the United States on the basis of that conviction, and, when he returned to the country, tried and convicted of illegal reentry under 8 U.S.C. § 1326. He contends that his prior removal order was invalid because his conviction under California Penal Code § 12021(c)(1) was not a categorical match for the Immigration and Nationality Act's ("INA") firearms offense. We agree that he was not originally removable as charged, and so could not be convicted of

illegal reentry.   We therefore reverse the judgment of conviction.

## I.

Aguilera entered the United States without inspection at the age of five to live with his parents, who were lawful permanent residents.  He became a lawful permanent resident in 2000.  Two years later, he was convicted of unlawful firearms possession in violation of California Penal Code § 12021(c)(1).[1]

In 2005, Aguilera was served with a Notice to Appear, alleging that he had been convicted of a crime involving moral turpitude, 8 U.S.C. § 1227(a)(2)(A)(i), and a firearms offense, 8 U.S.C. § 1227(a)(2)(C), and so was subject to removal.  One week later, Aguilera appeared before an Immigration Judge ("IJ").  He admitted that he had been convicted of unlawful firearms activity in violation of California Penal Code § 12021(c)(1), but did not concede removability.  The IJ nonetheless held Aguilera "subject to removal as charged," and denied him any relief from removal.  Aguilera was removed to Mexico.

Six years later, Aguilera was charged with attempted entry after deportation, in violation of 8 U.S.C. § 1326(a) and (b).   Aguilera moved to dismiss the indictment under § 1326(d), arguing that, during the 2005 removal proceedings, the IJ did not meaningfully advise him of his opportunity to apply for voluntary departure.  The district

---

[1] This section was replaced by California Penal Code § 29805, effective January 1, 2012.  For clarity, we refer to the statute as California Penal Code § 12021(c)(1).

court denied the motion, and Aguilera was found guilty of illegal reentry.  Aguilera was sentenced to time served, and has since been removed to Mexico.

On April 23, 2013, after Aguilera filed his opening brief in this case, the Supreme Court issued its decision in *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), concerning application of the categorical approach in immigration cases.  Although that case involved a marijuana conviction, the majority opinion addressed an argument by the Solicitor General that, under the Court's analysis, "a conviction under any state firearms law that lacks . . . an exception [for antique firearms present in the federal firearms statute] will be deemed to fail the categorical inquiry." *Id.* at 1693.  Aguilera moved to file a substitute opening brief in this case, arguing that, after *Moncrieffe*, his 2005 removal order was invalid for a second reason (in addition to the previously asserted due process violation): Aguilera was never deportable as charged because the California statute of conviction lacked an antique firearms exception.  We accepted the substitute brief, and the government responded to Aguilera's arguments in its answering brief.

We review Aguilera's collateral attack on his 2005 removal order de novo.  *See United States v. Lopez-Velasquez*, 629 F.3d 894, 896 (9th Cir. 2010) (en banc).

## II.

"A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 has a due process right to bring a collateral attack challenging the validity of his underlying deportation order because it serves as a predicate element of his conviction." *United States v. Melendez-Castro*, 671 F.3d

950, 953 (9th Cir. 2012) (per curiam) (citation omitted). Section 1326(d) expressly provides for such collateral attacks on an underlying deportation order, but establishes limits on them. A defendant must demonstrate that: (1) he exhausted all administrative remedies available to appeal his prior removal order; (2) the prior removal proceedings "improperly deprived [him] of the opportunity for judicial review;" and (3) the entry of the prior removal order was "fundamentally unfair." 8 U.S.C. § 1326(d).

The government recognizes that the first two elements of § 1326(d) have been met. It maintains, however, that Aguilera "cannot meet the last element, i.e., 'fundamental unfairness.'"

"An underlying removal order is 'fundamentally unfair' if (1) an alien's 'due process rights were violated by defects in the underlying deportation proceeding,' and (2) 'he suffered prejudice as a result of the defects.'" *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) (citation omitted). If Aguilera "was removed when he should not have been," his 2005 removal was fundamentally unfair, and he may not be convicted of reentry after deportation. *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006).

### III.

Aguilera's central contention is that the generic "federal definition of a 'firearm' specifically exempts antique firearms, while the California definition of a firearm does not. Thus, a person may be convicted under Cal[infornia] Penal Code § 12021 for conduct that does not fall within the firearms ground of removal." The government asks us not to

reach this argument on the ground that Aguilera waived it by failing to raise it in the district court. In addition, the government argues that *Moncrieffe* cannot be retroactively applied to invalidate a removal that was proper under the law at the time it was ordered. We address each of these points in turn.

## A.

As to waiver, the government contends that Aguilera's failure to raise his new *Moncrieffe* argument "before trial" as part of his motion to dismiss the indictment effected a waiver pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). That rule provides that "a motion alleging a defect in the indictment or information" "must be raised before trial." Fed. R. Crim. P. 12(b)(3)(B).

We decline to find such a waiver here. Rule 12(e) sets forth specifically the circumstances under which an argument is waived. It provides that "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets [for pretrial motions]." Fed. R. Crim. P. 12(e). But Rule 12(e) further indicates that "[f]or good cause, the court may grant relief from the waiver." *Id.* On appeal, we have held that "'even issues that are deemed waived [in the district court] under Rule 12 may be addressed by *this* court and relief may be granted' where good cause is shown for the party's failure to raise the argument earlier." *United States v. Anderson*, 472 F.3d 662, 669 (9th Cir. 2006) (quoting *United States v. Murillo*, 288 F.3d 1126, 1135 (9th Cir. 2002)) (internal quotation marks omitted) (emphasis and alteration in original). We find good cause to excuse Aguilera's failure to raise this argument in the district court.

Prior to *Moncrieffe*, Aguilera would have had no reason to challenge whether he was properly removed for a "firearms offense." As we explain below, this Court's caselaw prior to *Moncrieffe* foreclosed the argument he now makes. *See Gil v. Holder*, 651 F.3d 1000, 1005–06 (9th Cir. 2011). We have previously (albeit not explicitly in the Rule 12 context) "elect[ed] to entertain [an] issue [raised for the first time on appeal] because of a change in the intervening law that brought the issue into focus." *In re Skywalkers, Inc.*, 49 F.3d 546, 548 n.4 (9th Cir. 1995) (citing *Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir. 1986) (holding that a change in the law during the pendency of an appeal permits entertainment of an issue not previously raised), *cert. denied*, 481 U.S. 1050 (1987)); *cf. United States v. Tekle*, 329 F.3d 1108, 1112 (9th Cir. 2003) (affirming finding of "'no good cause'" to excuse a Rule 12 waiver "'because . . . *United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999) . . . did not change the law. In fact, the *Gantt* court acknowledged as much.'").

Moreover, Aguilera demonstrated diligence by moving in this Court within a month after *Moncrieffe* was decided to substitute his opening brief. And the government had a full opportunity to respond in written briefing and at oral argument to this purely legal issue. Aguilera has therefore shown "good cause" to excuse his failure to raise this argument in the district court. We decline to find it waived.

## B.

The government next contends that *Moncrieffe* cannot be retroactively applied to invalidate Aguilera's 2005 removal order. It cites *United States v. Vidal-Mendoza*, 705 F.3d 1012 (9th Cir. 2013), for the proposition that on collateral review,

a removal is to be judged "under the applicable law at the time of [the] removal hearing," *id.* at 1013, not "post-removal precedent," *id.* at 1016.

*Vidal-Mendoza* concerned the scope of an IJ's duty to advise a noncitizen of his eligibility for discretionary relief. It held that a noncitizen's due process rights are not violated if an IJ informs him, based on controlling law at the time of the removal hearing, that he is ineligible for relief, even if post-removal changes in the law would have altered that analysis. *Id*. at 1016–17. Noting that "an IJ need not anticipate future 'change[s] in law,'" *Vidal-Mendoza* suggested that applying post-removal precedent on collateral review would violate "our long-stated principle that 'IJs are not expected to be clairvoyant' when discharging their duty to inform." *Id.* at 1017 (quoting *Lopez-Velasquez*, 629 F.3d at 900–01) (alteration in original).

*Vidal-Mendoza* and its predecessor, *Lopez-Velasquez*, do not apply here. Those cases asked what law applies when evaluating whether an IJ violated its duty to inform the noncitizen of potential avenues for relief. This case concerns not the duty to *inform* the noncitizen of his eligibility for *relief* in a removal proceeding, but whether he was removable at all.

In a similar case, the Tenth Circuit concluded that "[d]ecisions of statutory interpretation are fully retroactive because they do not change the law, but rather explain what the law has always meant." *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1107 (10th Cir. 2005) (citing *Rivers v. Roadway Express Inc.*, 511 U.S. 298, 312–13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision

of the case giving rise to that construction.")). *Rivera-Nevarez* concerned whether the Supreme Court decision in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which held that a Florida driving under the influence of alcohol offense did not constitute a "crime of violence," would apply retroactively to invalidate a defendant's 1999 removal order. *Rivera-Nevarez*, 418 F.3d at 1107. The court held that "[b]ecause *Leocal* involves a question of statutory construction, its holding is retroactively applicable to the time of Rivera-Nevarez's removal hearing." *Id.* As *Leocal* merely "explain[ed] what the law has always meant," *Rivera-Nevarez* noted that it "provides the correct interpretation of the law as it stood in 1999 when Rivera-Nevarez was deported." *Id.*

We reached the same conclusion as the Tenth Circuit in *Camacho-Lopez*. Like *Rivera-Nevarez*, *Camacho-Lopez* concerned a pre-*Leocal* removal that was invalid after *Leocal*. *Camacho-Lopez* retroactively applied *Leocal*, explaining that "the government concedes that *Leocal*—a substantive interpretation of 'crime of violence' under 18 U.S.C. § 16—applies to Camacho's 1998 deportation hearing[,]" that "Camacho's Notice to Appear charged him as removable only for having committed an aggravated felony[,]" and that after *Leocal*, "Camacho's prior conviction did not fit that definition[.]" *Camacho-Lopez*, 450 F.3d at 930 (emphasis omitted). We therefore reversed his § 1326 conviction as having been premised on an invalid removal order. *Id.*

*Camacho-Lopez* has since been cited by district courts within the Ninth Circuit for the proposition that *any* post-removal substantive interpretation of a "crime of violence" or "aggravated felony" provision is fully retroactive on collateral review. *See, e.g.*, *United States v. Dominguez*, No. CR12-879 CAS, 2013 WL 2237786, at *3 n.2 (C.D. Cal. May

20, 2013); *United States v. Rodriguez Garcia*, No. CR-09-6093-EFS, 2010 WL 996409, at \*2 (E.D. Wash. Mar. 15, 2010). Our recent precedent, however, counsels a more restrictive reading of *Camacho-Lopez*. *See United States v. Gomez*, ___ F.3d ___, 2014 WL 1623725 (9th Cir. Apr. 24, 2014).

Unlike *Vidal-Mendoza* and *Lopez-Velasquez*, *Gomez* did not concern the IJ's duty to inform. *Gomez* nonetheless considered only the federal law "at the time [Gomez] was ordered deported in January 2006" in determining "whether [the] alien was eligible for *relief* from deportation." *Id.* at \*10 (emphasis added). *Gomez* did not, however, involve application of post-removal precedent on collateral review where that precedent would render a noncitizen *not removable*; *Camacho-Lopez* did. Indeed, *Gomez* specifically distinguished *Camacho-Lopez*, noting that "[i]t concerned whether [*Leocal*] was nonetheless applicable on collateral review to determine whether he was subject to removal as charged—not, as in this case, whether, although removable, he was entitled to discretionary relief." *Id.* at \*10 n.12 (distinguishing "relief from removal" from "removability").

Moreover, whether or not one regards *Camacho-Lopez* as binding precedent on that point,[2] there is good reason to distinguish between discretionary relief, as in *Gomez*, and

---

[2] *Camacho-Lopez* mentioned that the government "concede[d]" *Leocal*'s retroactive application. 450 F.3d at 930. To say that something was conceded is ordinarily to indicate that it is so. To note a concession is different from stating, as we often do, that a legal argument was not raised, or that we are assuming, but not deciding, a particular legal standard. *See, e.g.*, *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126 n.2 (9th Cir. 2012). Still, we shall assume for purposes of this opinion that *Camacho-Lopez* is not a definitive holding on the issue we here decide.

grounds for removability for purposes of collateral review of removal proceedings. Section 1326 is concerned with whether a noncitizen has reentered after being "denied admission, excluded, deported, or removed." 8 U.S.C. § 1326(a). Where a noncitizen is in fact removable, the denial of an opportunity to apply for a voluntary departure, the discretionary relief at issue in *Gomez*, does not implicate the propriety of a removal in the same fundamental a way as does an IJ's legal determination that a noncitizen is removable on the basis of precedent we now know to have been erroneous.

Where relief is discretionary, it may not have been accorded, requiring an after-the-fact inquiry comparing the equities in a particular case to those in similar cases. *See, e.g.*, *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013) (describing the process of determining whether a noncitizen was prejudiced by an IJ's failure to advise him of his eligibility for discretionary relief, including the "focus on whether aliens with similar circumstances received relief"). And where relief was not available at the time, there are no comparable cases with which to conduct the required analysis. Moreover, the relevant facts tending to show whether an IJ would have granted discretionary relief to a particular noncitizen would often have to be reconstructed, because there would have been no reason to develop them if the noncitizen was categorically ineligible for relief from removal at the time. Finally, most forms of relief from removal are matters of grace as to someone already determined to be removable. *See, e.g.*, *Tovar-Landin v. Ashcroft*, 361 F.3d 1164, 1167 (9th Cir. 2004) (describing voluntary departure, the form of relief also at issue in *Gomez*). Failing to obtain such discretionary relief is quite different than the situation here, where Aguilera would have

had the *right* to be in the United States, as a lawful permanent resident, but for the IJ's determination that he was removable — a determination we now know to be legally erroneous after *Moncrieffe*, as we explain below.

Where that is the question, the usual rule that statutory interpretation decisions are fully retroactive should apply. Otherwise, an individual who had the right to remain here as a legal resident — and to return to this country if he leaves — but was removed as a result of a legal error, would be subject to criminal conviction and incarcerated for returning. Such an individual is in effect being criminally punished for the government's legal mistake. To maintain via enforcement proceedings the finality of an otherwise proper removal order is one thing; to impose criminal sanctions under these circumstances is quite another.[3]

We therefore reject the government's position that we cannot consider *Moncrieffe* in evaluating whether Aguilera was removable as charged. We proceed to consider Aguilera's challenge on the merits.

## IV.

Federal law makes deportable "[a]ny alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying . . . any . . . firearm or

---

[3] We note that a determination by this Court on collateral review that a noncitizen's conviction was not for a federal aggravated felony offense would not affect the finality of the prior removal. *See* 8 C.F.R. § 1003.23(b)(1). It could, however, have other immigration consequences. *See, e.g.*, 8 U.S.C. § 1182(h).

destructive device (as defined in section 921(a) of Title 18) in violation of any law." 8 U.S.C. § 1227(a)(2)(C). Section 921(a)(3) defines the term "firearm," stating, inter alia, that "[s]uch term does not include an antique firearm." 18 U.S.C. § 921(a)(3).

Aguilera asserts that after *Moncrieffe*, any conviction under a state firearms statute lacking an exception for antique firearms is not a categorical match for the federal firearms ground of removal. We agree. And because *Moncrieffe* is "clearly irreconcilable" with this Court's prior case law, particularly in *Gil*, we must follow *Moncrieffe* not *Gil*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).

*Gil* held that "in conducting the categorical analysis, we do not consider the availability of affirmative defenses; the fact that there may be an affirmative defense under the federal statute, but not under the state statute of conviction, does not mean that the state conviction does not fall categorically within the federal statute." 651 F.3d at 1005. That general holding is still valid after *Moncrieffe*, as the Court's "decision said nothing about affirmative defenses." *United States v. Albino-Loe*, 747 F.3d 1206, 1212 (9th Cir. 2014). But *Gil*'s treatment of the antique firearms exception of § 1227(a)(2)(C) as an affirmative defense, which need not be considered in a categorical analysis, *see* 651 F.3d at 1005 n.3, rather than as an element of the definition of the criminal offense, which must be, *has* been clearly overruled.

A bit of background on *Moncrieffe* is necessary to understand its effect on our case law: Moncrieffe, a lawful permanent resident, pleaded guilty under Georgia law to possession of marijuana with intent to distribute. *Moncrieffe*, 133 S. Ct. at 1683. Alleging that Moncrieffe's conviction

constituted an aggravated felony, the government sought to deport him. *Id.* The Board of Immigration Appeals concluded that possession with intent to distribute is an offense under the Controlled Substances Act ("CSA"), 21 U.S.C. § 841(a), punishable by up to five years imprisonment, *id.* § 841(b)(1)(D), and therefore an aggravated felony. *Moncrieffe*, 133 S. Ct. at 1683. The Fifth Circuit affirmed, rejecting Moncrieffe's reliance upon § 841(b)(4), which makes distribution of a small amount of marijuana without remuneration punishable as only a misdemeanor. *Id.* The Supreme Court reversed. *Id.* at 1684.

The Court considered whether Moncrieffe's conviction necessarily involved facts equating to the aggravated felony of "'illicit trafficking in a controlled substance,'" which "encompasses all state offenses that 'proscrib[e] conduct punishable as a felony under [the CSA].'" *Id.* at 1685 (alteration in original) (citations omitted). "[T]o satisfy the categorical approach, a state drug offense must meet two conditions: [i]t must 'necessarily' proscribe conduct that is an offense under the CSA, and the CSA must 'necessarily' prescribe felony punishment for that conduct." *Id.* *Moncrieffe* thus reaffirmed a "core feature of the categorical approach: its focus on the minimal conduct that would satisfy the *statutory definition* of the offense of conviction." *Albino-Loe*, 747 F.3d at 1213 (emphasis in original).

Possession with intent to distribute was clearly an offense under the CSA, so the key question in *Moncrieffe* was whether that conduct was punishable as a felony or misdemeanor. The least culpable conduct (e.g., sharing a small amount of marijuana for no remuneration) would result in conviction under the Georgia statute, but trigger only misdemeanor punishment under the CSA. "So Moncrieffe's

[state] conviction could correspond to either the CSA felony or the CSA misdemeanor." *Moncrieffe*, 133 S. Ct. at 1686–87. *Moncrieffe* held that "[a]mbiguity on this point means that the conviction did not 'necessarily' involve facts that correspond to an offense punishable as a felony under the CSA. Under the categorical approach, then, Moncrieffe was not convicted of an aggravated felony." *Id.* at 1687.

*Moncrieffe*'s response to an argument by the Solicitor General in that case is of critical importance here:

> [T]he Government suggests that our holding will frustrate the enforcement of other aggravated felony provisions, like § 1101(a)(43)(C), which refers to a federal firearms statute that contains an exception for 'antique firearm[s],' 18 U.S.C. § 921(a)(3). *The Government fears that a conviction under any state firearms law that lacks such an exception will be deemed to fail the categorical inquiry.* But [*Gonzales v.*] *Duenas–Alvarez* requires that there be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." 549 U.S. [183,] 193 [(2007)]. To defeat the categorical comparison in this manner, a noncitizen would have to demonstrate that the State actually prosecutes the relevant offense in cases involving antique firearms.

*Id.* at 1693 (emphasis added).

Aguilera argues that this analysis governs here, and that because California does prosecute cases involving antique firearms under California Penal Code § 12021(c)(1), his conviction is not a categorical match for the federal firearms offense. The description of such an offense in 8 U.S.C. § 1227(a)(2)(C) incorporates the same definition of firearms, 18 U.S.C. § 921(a)(3), as that alluded to in *Moncrieffe* with regard to "other aggravated felony provisions." Thus, Aguilera's argument is consistent with the express language of *Moncrieffe*'s antique firearms discussion. It is also consistent with that opinion's overall analysis and holding.

*Moncrieffe* requires us to presume that Aguilera was convicted of an offense under California Penal Code § 12021(c)(1) using an antique firearm, because California actually prosecutes people for such conduct. *See, e.g.*, *People v. Charlton*, No. A122842, 2011 WL 1492529, at *1, 4 (Cal. Ct. App. Apr. 19, 2011) (affirming conviction under California Penal Code § 12021 for possession of replica muzzle-loading pistol); *People v. Servin*, No. E047394, 2010 WL 1619298, at *1 (Cal. Ct. App. Apr. 22, 2010) (affirming conviction under California Penal Code § 12021 for "family heirloom" replica single-shot muzzle-loading rifle incapable of using modern ammunition); *People v. Coffman*, No. C044728, 2005 WL 958409, at *1–2 (Cal. Ct. App. Apr. 26, 2005) (affirming conviction under California Penal Code § 12021 where the gun was described as an "antique cowboy-style gun with a long barrel" and an "old-style cap and ball pistol that was rusted and would only fire one shot at a time and had to be reloaded each time to fire"); *People v. Cushman*, No. C044129, 2005 WL 300024, at *1 (Cal. Ct. App. Feb. 9, 2005) (affirming conviction under California Penal Code § 12021 for possession of black powder, muzzle-loading firearms). These recent examples of

California prosecutions involving antique firearms meet the "realistic probability" standard of *Duenas-Alvarez*. 549 U.S. at 193. Under the express language of *Moncrieffe*, the "categorical comparison" is therefore "defeat[ed]." 133 S. Ct. at 1693.

*Moncrieffe*'s overall analysis also supports the conclusion that California Penal Code § 12021(c)(1) and the immigration law's firearms offense definition are not a categorical match. As this Court recently recognized, *Moncrieffe* clarified that a definitional element of a criminal offense, like the antique firearms exception, must be considered for purposes of the categorical approach, even if affirmative defenses are not. *See Albino-Loe*, 747 F.3d at 1213–14. *Moncrieffe* squarely rejected the Solicitor General's argument in that case that "the categorical approach is concerned only with the 'elements' of an offense," not a definitional element like § 841(b)(4), the social marijuana sharing exception, or § 921(a)(3)(D), the antique firearm exception. 133 S. Ct. at 1683. "[W]hen Congress has chosen to *define* the generic federal offense by reference to punishment, it may be necessary to take account of federal sentencing factors too." *Id.* at 1687 (emphasis added). The Court therefore held that "to qualify as an aggravated felony, a conviction . . . must necessarily establish" "the presence . . . of certain factors that are not themselves elements of the crime." *Id.*

In *Moncrieffe*, this holding meant that a state conviction must establish that the offense did *not* involve social sharing of a small quantity of marijuana to be a categorical match. In this case, it would mean establishing that the offense did *not* involve an antique firearm. As we explained in *Albino-Loe*,

> the antique firearms exception appears in
> 18 U.S.C. § 921, a section titled "Definitions."
> *See* 18 U.S.C. § 921(a)(3) ("The term
> 'firearm' means (A) any weapon (including a
> starter gun) which will or is designed to or
> may readily be converted to expel a projectile
> by the action of an explosive; (B) the frame or
> receiver of any such weapon; (C) any firearm
> muffler or firearm silencer; or (D) any
> destructive device. *Such term does not include
> an antique firearm*." (emphasis added)). *One
> cannot know what conduct constitutes a
> firearms offense without knowing the
> definition of "firearm," which excludes
> antique firearms.*

747 F.3d at 1214 (final emphasis added). A state statute that
allows conviction for offenses using antique firearms would
therefore not equate to the § 1227(a)(2)(C) firearms offense.

*Moncrieffe* further clarified that these *definitional*
elements must be considered regardless of which party would
bear the burden of proof in a criminal prosecution. In
*Moncrieffe*, the Solicitor General noted that in a criminal
prosecution, the government "need not negate the § 841(b)(4)
factors[;] . . . [i]nstead, the burden is on the defendant to show
that he qualifies" for misdemeanor treatment under
§ 841(b)(4). 133 S. Ct. at 1688. The Court acknowledged
that the defendant bears the burden in a criminal trial, but
concluded that the burden was irrelevant to the "'more
focused, categorical inquiry' . . . whether the record of
conviction of the predicate offense necessarily establishes
conduct that the CSA, on its own terms, makes punishable as
a felony." *Id.* (citation omitted). "Our concern is only which

facts" the generic federal definition required, rather than "who has the burden of proving which facts in a federal prosecution." *Id.* at 1689. Thus, to the extent that *Gil* relied on the fact that, in a federal criminal prosecution, a defendant would be required to prove that the firearm was an antique, *see* 651 F.3d at 1005 n.3 (citing criminal cases), it has been overruled by *Moncrieffe*.[4]

*Moncrieffe* also reiterated that in evaluating whether there is a categorical match, "we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized." 133 S. Ct. at 1684 (alteration in original) (citation omitted). In that case, doing so meant presuming that the defendant had shared a small quantity of marijuana for no remuneration — since Georgia actually prosecuted people for such conduct. The same is true of the antique firearm exception. *Moncrieffe* requires us to presume that Aguilera was convicted of an offense under California Penal Code § 12021(c)(1) using an antique firearm, as long as California actually prosecutes people for such conduct — which, as we have seen, it does.

In sum, California Penal Code § 12021(c)(1) punishes anyone who "owns, purchases, receives, or has in possession or under custody or control, any firearm" within ten years of a prior conviction for certain misdemeanors. It does not have an antique firearms exception, and California prosecutes for offenses involving antique firearms. A conviction under

---

**4** We are not holding that *Gil*'s distinction between affirmative defenses and elements of a crime is invalid for all categorical analyses. Rather, we read *Moncrieffe* as applying particularly to definitional provisions, and as holding that as to such provisions, the allocation of the burden of proof is not relevant to a categorical analysis.

California Penal Code § 12021(c)(1) is therefore not a categorical match for the § 1227(a)(2)(C) firearms offense. "Because the statute is missing an element of the[ ] generic crime[ ], our inquiry ends here—we do not undertake a modified categorical analysis." *Gomez*, 2014 WL 1623725, at *17.

The government concedes that Aguilera's conviction was not for a "crime of moral turpitude" — the other potential ground of removal. As a result, there was no legal basis for his 2005 removal order. As Aguilera "was removed when he should not have been," he "clearly suffered prejudice." *Camacho-Lopez*, 450 F.3d at 930.

A valid prior removal order "serves as a predicate element of [Aguilera's] conviction" for illegal reentry under § 1326. *Melendez-Castro*, 671 F.3d at 953. As Aguilera's 2005 removal order was invalid, we reverse his conviction.[5]

**REVERSED.**

---

[5] As we reverse Aguilera's conviction on this basis, we need not consider his alternative argument that the IJ violated due process by not affording him a meaningful opportunity to apply for pre-conclusion voluntary departure.