**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50406 |
| Plaintiff - Appellee, | D.C. No. 3:13-cr-01661-LAB-1 |
| v. | |
| JOSE SANTOS ZEPEDA-GONZALEZ, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted August 4, 2014
Pasadena, California

Before: REINHARDT, WARDLAW, and CALLAHAN, Circuit Judges.

Jose Santos Zepeda-Gonzalez (Zepeda), a native and citizen of Mexico,

appeals his conviction for illegal reentry in violation of 8 U.S.C. § 1326. We have

jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Title 8, Section 1326 provides criminal penalties for (1) any alien, who (2) has been removed from the United States, and (3) is later found in the United States without having first obtained the consent of the Attorney General to reapply for admission. 8 U.S.C. § 1326(a)(1)–(2); *see also United States v. Gondinez-Rabadan*, 289 F.3d 630, 632-33 (9th Cir. 2002).

At trial, the government introduced evidence that Zepeda is an alien; that he had been removed from the United States three times, pursuant to a June 15, 2000 removal order, a June 14, 2003 expedited removal order, and a reinstatement of his June 15, 2000 removal order on October 25, 2010; and that he was found in the United States on March 13, 2013, without the Attorney General's advance consent to reapply for admission.

1. To the extent the district court relied on Zepeda's June 15, 2000 removal order and that order's October 25, 2010 reinstatement as predicates for an illegal reentry conviction, it was error to do so. Zepeda's June 15, 2000 removal order was based solely on the determination that his 1999 felony DUI conviction, under California Vehicle Code § 23152(b), constituted a "crime of violence," and therefore an aggravated felony. *See* 18 U.S.C. § 16; 8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(A)(iii). In *Leocal v. Ashcroft*, 543 U.S. 1, 8–10 (2004), however, the Supreme Court held that DUI statutes that lack a mens rea element or require only

negligence in the operation of a vehicle, such as California's, do not define a crime of violence and therefore do not constitute aggravated felonies.

The district court concluded that *Leocal* did not apply retroactively to Zepeda's collateral attack. We have since made clear, however, that changes in statutory interpretation apply retroactively in collateral attacks under 8 U.S.C. § 1326(d), when a lawful permanent resident would not have been removable at all under the subsequent interpretation of the statute. *United States v. Aguilera-Rios*, 769 F.3d 626, 631–33 (9th Cir. 2014).[1] Because Zepeda would not have been removable in 2000 under *Leocal*, his June 15, 2000 removal order cannot be used to satisfy an element of illegal reentry. The reinstatement of his June 15, 2000 removal order on October 25, 2010 also cannot be used as a predicate for illegal reentry because it "stand[s] on no stronger legal basis," because the "original removal was statutorily . . . flawed." *United States v. Arias-Ordonez*, 597 F.3d 972, 978 (9th Cir. 2010).

2. Although Zepeda's June 15, 2000 and October 25, 2010 removal orders may not serve as predicates for illegal reentry, the evidence at trial was sufficient

---

[1] *Aguilera-Rios* does not conflict with *Teague v. Lane*, 489 U.S. 288 (1989). The Court in *Teague* addressed the retroactivity of "new constitutional rules of criminal procedure" in habeas corpus proceedings. 489 U.S. at 306, 310. In contrast, *Aguilera-Rios* addressed the retroactivity of changes in statutory interpretation in collateral proceedings under 8 U.S.C. § 1326(d).

to support his conviction. *United States v. Begay*, 673 F.3d 1038, 1043 (9th Cir. 2011) (en banc). Zepeda's June 14, 2003 expedited removal order was based on an independent ground of removability—the presentation of false identification to immigration authorities at a port of entry. We have held that expedited removal orders may be used "as predicates in § 1326 prosecutions." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1086 (9th Cir. 2011). The government also introduced evidence that Zepeda was an alien, and that on March 13, 2013, he was found in the United States without the Attorney General's advance consent to reapply for admission. Together, this evidence was sufficient to sustain a conviction for illegal reentry beyond a reasonable doubt. *See* 8 U.S.C. § 1326(a)(1)–(2); *Gondinez-Rabadan*, 289 F.3d at 632-33.

3. Even assuming that § 1326(a)(2)(B)'s affirmative defense to illegal reentry incorporates § 1182, Zepeda failed to establish the affirmative defense. Section 1326(a)(2)(B) provides a defense if the alien establishes that, at the time he reentered the United States, he was not required to obtain the Attorney General's consent to reapply for admission. Zepeda argues that he was not required to obtain the Attorney General's consent to reapply for admission when he reentered on March 13, 2013, under 8 U.S.C. § 1182(a)(9)(A). That subsection provides that if an alien is ordered removed from the United States a single time, the alien must

4

obtain the Attorney General's consent to reapply for admission for either five years or ten years thereafter, depending on the type of removal proceeding to which the alien was subject. If an alien is removed more than once, however, the alien must obtain the Attorney General's consent to reapply for admission for twenty years following the alien's last removal. 8 U.S.C. § 1182(a)(9)(A)(i)–(ii)(II).

After Zepeda was removed from the United States on June 14, 2003—his second removal—he was required under § 1182(a)(9)(A) to obtain the Attorney General's consent to reapply for admission for twenty years thereafter. And after Zepeda was removed on October 25, 2010—his third removal—the twenty year period began again, requiring him to obtain the Attorney General's consent to reapply for admission until October 25, 2030. Zepeda, therefore, failed to establish that he was not required to obtain the Attorney General's consent to reapply for admission when he reentered the United States on March 13, 2013.

In considering the applicability of § 1326(a)(2)(B)'s affirmative defense, it is immaterial that the basis for Zepeda's June 15, 2000 and October 25, 2010 removal orders was erroneous under *Leocal*. To determine whether Zepeda was required to obtain the Attorney General's consent to reapply for admission at the time he reentered the United States on March 13, 2013, the relevant question is how many times prior to that reentry "ha[d] [Zepeda] been ordered removed[?]" 8

5

U.S.C. § 1182(a)(9)(A)(i)–(ii)(II). The answer is three times. Zepeda never sought

reconsideration of any of his prior removal orders with an immigration judge, *see* 8

C.F.R. § 1003.23(b)(1), and "a determination by this Court on collateral review

that a noncitizen's conviction was not for a federal aggravated felony offense

[does] not affect the finality of the prior removal." *Aguilera-Rios*, 769 F.3d at 633

n.3. Such a determination means only that Zepeda's June 15, 2000 and October

25, 2010 removal orders may not be used to satisfy an element of the illegal reentry

offense. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837–39 (1987).

Although we do not "impose criminal sanctions" based on Zepeda's June 15, 2000

and October 25, 2010 removal orders, *Aguilera-Rios*, 769 F.3d at 633, we do

consider those removals in evaluating Zepeda's affirmative defense.[2]

    **AFFIRMED.**

---

[2] There are few cases in which an alien has sought to use the affirmative defense in § 1326(a)(2)(B), and we see no need to attempt to outline the contours of that defense here. At a minimum, the statute requires that the alien "establish" that he was not required to obtain the Attorney General's advance consent. In light of the numerous times Zepeda has been removed, establishing that he did not need advance consent to reapply to enter the United States was an impossibility. We thus leave elucidation of the intersection of 8 U.S.C. § 1326(a)(2)(B) and 8 U.S.C. § 1182(a)(9) for another day.

*USA v Jose Santos Zeppeda -Gonzalez 13-50406*

REINHARDT, Circuit Judge., dissenting.

I would reverse Zepeda-Gonzalez's conviction under 8 U.S.C. § 1326. Because Zepeda-Gonzalez's 2013 illegal reentry occurred after the five-year period for seeking advance consent triggered by his 2003 removal had expired, he was not required to obtain such consent and thus did not violate that statute.

As the majority correctly concludes, two of Zepeda-Gonzalez's removal orders—the 2000 removal order for his felony DUI conviction, and the reinstatement of that removal order in 2010—are "statutorily flawed" under *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which we apply retroactively, *United States v. Aguilera-Rios*, 769 F.3d 626 (9th Cir. 2014), and therefore cannot be used as predicates for an illegal reentry conviction under § 1326. This leaves only the 2003 removal order that required Zepeda-Gonzalez to obtain advance consent. The bar that resulted from that order, standing alone, expired long before the 2013 illegal reentry. The majority holds, however, that even though the 2000 and 2010 removal orders are invalid, they nonetheless constitute additional removals triggering a twenty-year period during which Zepeda-Gonzalez was required to seek the consent required by § 1326. The majority then affirms Zepeda-Gonzalez's conviction under § 1326 on the ground that he failed to obtain that

consent. I disagree with this holding, if only because it clearly contradicts the majority's own correct conclusion that an invalid removal cannot serve as a predicate for a § 1326 conviction.

The majority states that the statutorily flawed removal orders trigger the twenty-year period because Zepeda-Gonzlaez never sought reconsideration of those orders. There was, however, no need to do so. We do not require a defendant to seek reconsideration of an invalid prior removal as a prerequisite to bringing a collateral attack on his conviction, *United States v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987), or on a resulting sentencing enhancement, *United States v. Rodriguez-Ocampo* (per curiam), 664 F.3d 1275, 1278 (9th Cir. 2011).[1] That the majority characterizes the exception to § 1326 as an affirmative defense means only that the defendant bears the burden of demonstrating that the consent was not required, which Zepeda-Gonzalez has done by demonstrating that the 2000 and 2010 removal orders were unlawful and that his 2013 reentry occurred more than five years after his only lawful removal.

---

[1]The majority's citation to *United States v. Aguilera-Rios*, 769 F.3d 626, 633 n. 3 (9th Cir. 2014), for the proposition that "a determination by this Court on collateral review that a noncitizen's conviction was not for a federal aggravated felony offense [does] not affect the finality of the prior removal" is inapposite. While a motion to reconsider or reopen may not be filed before a removal order becomes final, *id.* (citing 8 C.F.R. § 1003.23(b)(1)), an order's finality does not insulate it from collateral attack.

Quoting 8 U.S.C. § 1182(a)(9)(A)(i)-(ii)(II), the majority insists that the relevant question is only how many times prior to the reentry "ha[d] [Zepeda] been ordered removed," legally or illegally. True, the statute does not expressly limit its scope only to lawful removals, but neither does § 1326. The majority's construction—imposing criminal penalties even for unlawful removals—is not only unreasonable under all ordinary legal principles but it would deny defendants due process of law. For the latter reason, the Supreme Court rejected such a construction of § 1326 in *Mendoza-Lopez*. See 481 U.S. at 837 ("If the statute envisions that a court may impose a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process."). Accordingly, Zepeda-Gonalez's conviction must be reversed. I dissent.