REINHARDT, Circuit Judge.,
dissenting.
I would reverse Zepeda-Gonzalez’s conviction under 8 U.S.C. § 1326. Because Zepeda-Gonzalez’s 2013 illegal reentry occurred after the five-year period for seeking advance consent triggered by his 2003 removal had expired, he was not required to obtain such consent and thus did not violate that statute.
As the majority correctly concludes, two of Zepeda-Gonzalez’s removal orders — the 2000 removal order for his felony DUI conviction, and the reinstatement of that removal order in 2010 — are “statutorily flawed” under Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), which we apply retroactively, United States v. Aguilera-Rios, 769 F.3d 626 (9th Cir.2014), and therefore cannot be used as predicates for an illegal reentry conviction under § 1326. This leaves only the 2003 removal order that required Zepeda-Gon-zalez to obtain advance consent. The bar that resulted from that order, standing alone, expired long before the 2013 illegal reentry. The majority holds, however, that even though the 2000 and 2010 removal orders are invalid, they nonetheless constitute additional removals triggering a twenty-year period during which Zepeda-Gonzalez was required to seek the consent required by § 1326. The majority then affirms Zepeda-Gonzalez’s conviction under § 1326 on the ground that he failed to obtain that consent. I disagree with this holding, if only because it clearly contradicts the majority’s own correct conclusion that an invalid removal cannot serve as a predicate for a § 1326 conviction.
The majority states that the statutorily flawed removal orders trigger the twenty-year period because Zepeda-Gonzalez never sought reconsideration of those orders. There was, however, no need to do so. We do not require a defendant to seek reconsideration of an invalid prior removal as a prerequisite to bringing a collateral attack on his conviction, United States v. Mendoza-Lopez, 481 U.S. 828, 837, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), or on a resulting sentencing enhancement, United States v. Rodriguez-Ocampo (per curiam), 664 F.3d 1275, 1278 (9th Cir.2011).[1] That *398 the majority characterizes the exception to § 1826 as an affirmative defense means only that the defendant bears the burden of demonstrating that the consent was not required, which Zepeda-Gonzalez has done by demonstrating that the 2000 and 2010 removal orders were unlawful and that his 2013 reentry occurred more than five years after his only lawful removal.
Quoting 8 U.S.C. § 1182(a)(9)(A)(i)-(ii)(II), the majority insists that the relevant question is only how many times prior to the reentry “ha[d] [Zepeda] been ordered removed,” legally or illegally. True, the statute does not expressly limit its scope only to lawful removals, but neither does § 1326. The majority’s construction — imposing criminal penalties even for unlawful removals — is not only unreasonable under all ordinary legal principles but it would deny defendants due process of law. For the latter reason, the Supreme Court rejected such a construction of § 1326 in Mendoza-Lopez. See 481 U.S. at 837, 107 S.Ct. 2148 (“If the statute envisions that a court may impose a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process.”). Accordingly, Zepeda-Gonzalez’s conviction must be reversed. I dissent.

. The majority’s citation to United States v. Aguilera-Rios, 769 F.3d 626, 633 n. 3 (9th Cir.2014), for the proposition that "a determination by this Court on collateral review that a noncitizen's conviction was not for a federal *398 aggravated felony offense [does] not affect the finality of the prior removal” is inapposite. While a motion to reconsider or reopen may not be filed before a removal order becomes final, id. (citing 8 C.F.R. § 1003.23(b)(1)), an order’s finality does not insulate it from collateral attack.