**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 5, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BENJAMIN SANCHEZ-PORRAS,

Defendant - Appellant.

No. 20-2016
(D.C. No. 2:19-CR-01374-KG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Benjamin Sanchez-Porras appeals from a district court order that denied his

motion to dismiss his indictment for re-entry of a removed alien.  Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

Sanchez-Porras is a Mexican citizen who became a U.S. permanent resident in

1985.  Thirteen years later, in 1998, he was charged in Iowa state court with two drug

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

offenses: "Count I . . . knowingly possess[ing] a controlled substance, to wit: Mari[j]uana, a Schedule I Controlled Substance with the intent to deliver"; and "Count II . . . knowingly possess[ing] a controlled substance, to wit: Marijuana, a Schedule I Controlled Substance with the intent to deliver, without affixing the appropriate tax stamp, said substance weighing more than 42.5 grams." Aplee. Supp. App. at 18. The information indicated that Count Two arose under "453B.1(3)(b), 453B.12, [of the] 1997 Code of Iowa." *Id.* at 19. Sanchez-Porras pled guilty to Count Two. The court dismissed Count One and placed him on probation.

In 1999, the former Immigration and Naturalization Service (INS) served Sanchez-Porras with a notice to appear (NTA), alleging that he was removable for having an aggravated felony conviction, which it identified as "Possession of a Controlled Substance with the Intent to Deliver, to wit: Marijuana, in violation of Code of Iowa, Sections 453.1(3)(b) [sic] and 453B.12, 1997." *Id.* at 27.

Sanchez-Porras appeared before an Immigration Judge (IJ) for a removal hearing. Through attorney Joseph Rey, Sanchez-Porras admitted the NTA's allegations and conceded removability. The IJ ordered Sanchez-Porras removed to Mexico, stating that he had been convicted of an aggravated felony and was ineligible for any relief. Rey waived Sanchez-Porras's right to appeal, and the INS immediately removed him to Mexico. After a few months, however, he returned to the U.S.

Almost twenty years later, in February 2019, Sanchez-Porras was arrested in New Mexico and charged with illegal re-entry, a violation of 8 U.S.C. § 1326(a). He moved to dismiss the indictment by collaterally attacking his removal order under § 1326(d). That

2

provision requires an alien to show, among other things, that the removal order's entry "was fundamentally unfair." 8 U.S.C. § 1326(d)(3). Sanchez-Porras attacked the removal order on the grounds that (1) it was based on the dismissed Iowa trafficking count, rather than the tax-stamp count; and (2) Rey had provided ineffective assistance of counsel by not verifying the existence of the alleged trafficking conviction. In support, Sanchez-Porras submitted the affidavit of immigration lawyer Orlando Mondragon, who opined that if Rey had identified the error, the IJ "would [have] terminated [the removal] proceedings and . . . not order[ed] Mr. Sanchez removed." Aplt. App. at 17.

The government opposed the motion to dismiss. It conceded that the NTA used the wrong title of Sanchez-Porras's conviction. But it pointed out that the NTA properly cited one of the tax-stamp statutes, § 453B.12, and it argued that Sanchez-Porras was removable for that conviction, *see* 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance (as defined in section 802 of title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.").

Sanchez-Porras replied that even if he was removable for the tax-stamp conviction, he was eligible for cancellation of removal. He acknowledged, though, that he had additional arrests for drunk driving, possessing a stolen vehicle, and domestic violence, which would have been relevant to his likelihood of actually obtaining cancellation.

3

A magistrate judge held an evidentiary hearing, taking testimony from Mondragon and Sanchez-Porras.[1] Mondragon testified that Rey was ineffective for not discovering the NTA's error. But even if Rey had noticed the error, Mondragon said, the government could have simply amended the NTA or filed a new NTA to charge removability based on the tax-stamp conviction. In particular, Mondragon opined that the government could have charged that conviction as "an offense relating to a controlled substance." Aplt. App. at 53; *see also id.* at 52 ("So what the Government should have done would have changed the charge or lodge[d] a different charge . . . ."). Mondragon added, however, that Sanchez-Porras would have been a good candidate for cancellation of removal if he had "no other run ins with the law." *Id.* at 58. Although Mondragon knew that Sanchez-Porras had other arrests, he did not know what type of offenses were involved.

Sanchez-Porras testified about his criminal history. In regard to his Iowa offenses, he explained that he was just "hanging around with the people [he] shouldn't [have] be[en] hanging around with." *Id.* at 78. He claimed "that . . . other people had [the] marijuana" and he was keeping them "company" while they drove to Iowa. *Id.* at 78, 89. He initially claimed he was unaware they were transporting marijuana, but then admitted he knew that fact, but not that they had brought "49 pounds of marijuana." *Id.* at 88-89. Regarding his domestic-violence arrest, he said it "was a misunderstanding on [an] occasion with [his] wife but it was just a misunderstanding" because "[n]othing happened." *Id.* at 77. As for his stolen-vehicle arrest, he explained that "the car had been

---

[1] Rey was deceased.

loaned to [him]" and "everything worked out fine" because it "was not [his] fault." *Id.* As for his DWI arrest, he simply did not "know what happened with that case[.]" *Id.* at 75-76.

After the hearing, the magistrate judge recommended denying Sanchez-Porras's motion to dismiss because the removal order's entry was not fundamentally unfair. The magistrate judge explained that even if the NTA relied on Sanchez-Porras's dismissed count and Rey provided ineffective assistance, Sanchez-Porras was nevertheless removable on the tax-stamp conviction, which "would have been substituted as the underlying charge in the NTA." *Id.* at 119. In regard to Sanchez-Porras's likelihood of obtaining cancellation of removal, the magistrate judge found "it was more likely that discretionary relief would be denied and [his] removal ordered" based on his criminal history. *Id.* at 132. The magistrate judge found that Sanchez-Porras's testimony downplaying that history was not credible because he was "obvious[ly] . . . minimizing the seriousness of the conduct for which he was charged and his involvement in the[ ] [offenses]." *Id.* at 133-34.

Sanchez-Porras objected to the magistrate judge's recommendation on one ground, that it was "erroneously premised on the unsupported assumption[ ] that [the government] would have substituted as the underlying charge in the NTA the Iowa drug tax stamp violation." *Id.* at 140 (alterations and internal quotation marks omitted). The district judge overruled Sanchez-Porras's objection, citing Mondragon's testimony at the hearing as "sufficient evidence to support a finding that it is reasonably likely that the Government would have substituted the dismissed charge[ ] or recharged [Sanchez-

5

Porras] with the drug tax stamp violation." *Id.* at 148 (emphasis omitted). Consequently, the district judge adopted the magistrate judge's recommendation and denied Sanchez-Porras's motion to dismiss.

Sanchez-Porras conditionally pled guilty to illegal re-entry, reserving his right to appeal. The district court sentenced him to time served, and this appeal followed.

## DISCUSSION

We review de novo a denial of a motion to dismiss an illegal re-entry indictment. *See United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004). To challenge the validity of the underlying removal order, the defendant "must show (1) that he exhausted all administrative remedies available to contest the previous removal order, (2) that the previous removal proceedings deprived him of the opportunity to seek judicial review, and (3) that the previous order's entry was fundamentally unfair." *United States v. Almanza-Vigil*, 912 F.3d 1310, 1316 (10th Cir. 2019) (citing 8 U.S.C. § 1326(d)).

We focus on only the third element – fundamental unfairness. "To demonstrate fundamental unfairness, the noncitizen must establish a reasonable likelihood that, but for the complained-of error, he would have avoided removal." *Id.* at 1323.

Sanchez-Porras argues the district court erred in concluding that "the erroneous charge of removability would have been amended" to his tax-stamp conviction because "the government produced no competent evidence or expert opinion . . . that the charge would have in fact been amended with reasonable certainty." Aplt. Opening Br. at 10-11. We are not persuaded for two reasons.

6

First, the argument misplaces the burden of proof. Sanchez-Porras was required to show that but for the incorrectly charged offense, he would have avoided removal. *See Almanza-Vigil*, 912 F.3d at 1323. Thus, if the government could have substituted his tax-stamp conviction and removed him on that basis, he was not prejudiced by the incorrect charge. *See Aguirre-Tello*, 353 F.3d at 1204 (stating that "[t]he defendant has the burden of showing that the underlying deportation hearing was fundamentally unfair, and to do so he must show that he was prejudiced").[2]

Second, Sanchez-Porras's own expert testified that if Rey had challenged the NTA, "the government could have re-charged him" "under the section where [the drug tax-stamp violation is] an offense relating to a controlled substance." Aplt. App. at 53. Nevertheless, Sanchez-Porras argues, he could have sought cancellation of removal if he had been properly charged, and he maintains that the equities weighed in favor of him

---

[2] Sanchez-Porras contends he was "presumptive[ly] prejudice[d]" by "his improper classification as an aggravated felon." Aplt. Opening Br. at 12. He relies on *United States v. Aguilera-Rios*, 769 F.3d 626 (9th Cir. 2014). But that case is distinguishable. Aguilera-Rios had been convicted in California for "unlawful firearms possession," which the NTA charged as a removable offense under both 8 U.S.C. § 1227(a)(2)(C) (certain firearm offenses) and 8 U.S.C. § 1227(a)(2)(A)(i) (crimes involving moral turpitude). *Aguilera-Rios*, 769 F.3d at 629. The Ninth Circuit reversed Aguilera-Rios's illegal re-entry conviction because there was no legal basis for his removal under either immigration statute: his California conviction did not categorically match "the federal firearms ground of removal," *id.* at 634, and the government had conceded his "conviction was not for a 'crime of moral turpitude.'" *Id.* at 637. In short, Aguilera-Rios was removed for an offense that did not legally qualify him for removal. But that is not what happened to Sanchez-Porras, who was removable, just not for the reason stated by the NTA.

We note that Sanchez-Porras does not contest being removable for the tax-stamp conviction. Consequently, we assume without deciding that he was removable.

7

getting that relief. But we do not address cancellation because he did not object to the magistrate judge's cancellation determination. *See United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) (stating that this court employs a firm waiver rule requiring that "a party's objections to the magistrate judge's report and recommendation must be . . . specific to preserve an issue for . . . appellate review").

Sanchez-Porras also argues that "the fact that [he] may have been removable pursuant to an uncharged basis is not relevant to the issue of whether this removal order was fundamentally unfair." Aplt. Opening Br. at 13. He invokes the rule of administrative law that a "court may not uphold an agency action on grounds not relied on by the agency." *Id.* (internal quotation marks omitted). Granted, a "court is powerless to affirm the administrative action by substituting what may be a more adequate or proper basis," because "do[ing] so would propel the court into the domain which Congress has set aside exclusively for the administrative agency." *Carpio v. Holder*, 592 F.3d 1091, 1103 (10th Cir. 2010) (brackets and internal quotation marks omitted). But the procedural posture of this case is not direct review of administrative action. Rather, we are engaged in direct review of a district court decision that involves a criminal defendant's collateral attack on an agency's removal decision. As part of that process, Congress has required that we consider the fundamental fairness of the defendant's removal, *see* 8 U.S.C. § 1326(d)(3), which necessarily "hinges on [the defendant's] chances of receiving relief from removal," *Almanza-Vigil*, 912 F.3d at 1323 n.10 (acknowledging the bar against "upholding [a] removal order on grounds different from those stated in that order"); *see also United States v. Martinez-Hernandez*, 932 F.3d

8

1198, 1204 (9th Cir.) (stating that despite the bar against "affirm[ing] the [Board of Immigration Appeals] on a ground never charged," "the central issue for decision [under § 1326(d)(3)] is whether a defendant was removed when he should not have been" (internal quotation marks omitted)), *cert. denied*, 140 S. Ct. 392 (2019). Thus, Sanchez-Porras's removability for the tax-stamp conviction is relevant to the fundamental fairness inquiry. And, as the government underscores, "the NTA correctly cited one of the Iowa [tax-stamp] statutes under which Sanchez-Porras was convicted," despite erroneously "describing the offense and listing it as an aggravated felony." Aplee. Br. at 24.

Because Sanchez-Porras has not shown that the entry of his removal order was fundamentally unfair, the district court correctly denied his motion to dismiss.

## CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

9